856 So.2d 766 (2002)
John Stewart NEAL
v.
Terrill NEAL and James Willett Neal.
John Stewart Neal
v.
N.Q. Adams, Kate Neal McNeel, and Lauren Neal Shepard.
1991439, 1992202.
Supreme Court of Alabama.
September 6, 2002.
Applications for Rehearing Overruled March 14, 2003.
*769 Walter R. Byars of Steiner-Crum, Byars & Main, P.C., Montgomery; and Reo Kirkland, Jr., Brewton, for appellant.
William R. Stokes, Jr., of Stokes, Jernigan & Stokes, Brewton, guardian ad litem.
Frank M. Bainbridge of Bainbridge, Mims, Rogers & Smith, L.L.P., Birmingham, for appellees Terrill Neal and James Willett Neal.
Broox G. Garrett, Jr., of Thompson, Garrett & Hines, L.L.P., Brewton; and Andrew J. Noble III of Bradley Arant Rose & White, L.L.P., Birmingham, for appellees N.Q. Adams, Kate Neal McNeel, and Lauren Neal Shepard.
Broox G. Garrett, Jr., of Thompson, Garrett & Hines, L.L.P., Brewton; and Andrew J. Noble III of Bradley Arant Rose & White, L.L.P., Birmingham, for amicus curiae in case no. 1991439, N.Q. Adams, Kate Neal McNeel, and Lauren Neal Shepard.
Terry L. Butts, Troy, for amicus curiae David U. Rhone, Sr., and other officials of St. Paul A.M.E. Church as representatives of the class of religious and/or charitable corporations, trusts, organizations, individuals, or groups of individuals in Calhoun County, Florida, and/or Escambia County, Alabama.
JOHNSTONE, Justice.
John Stewart Neal, the appellant in these two consolidated appeals and the movant on a motion filed directly with us, is litigating against the successor cotrustees of a family trust and against his two adoptive brothers to get more from the trust than was granted to him by a 1997 judgment, which he did not appeal. Over two years after rendition of that judgment, he sought relief from it and suffered the two successive summary judgments he has now appealed to us. Because we conclude that the relief John seeks is precluded, we must deny his motion and affirm both of the summary judgments now on appeal.
The story is somewhat long but not particularly complicated. A chronology, analysis, and conclusion follow, in that order.

Chronology
In 1941, W.T. Neal executed a will creating a trust. The provisions of the will itself establish the terms of the trust. The will appointed three coexecutors, Ed Leigh McMillan, Violet H. Neal, and W.T. Neal, Jr. (hereinafter "W.T. Jr."), the son of the testator and trustor, and likewise appointed the same three as cotrustees of the trust. The trust required the trustees to pay $3,000 per year to each of W.T. Jr. and Violet H. Neal while both lived and, after Violet's death, $6,000 per year to W.T. Jr. while he lived, and then to his children or their descendants per stirpes. The instrument further provides, in pertinent part:

"Descendant, as used in this will, is intended to mean and include child and grandchild of any degree.
"I direct that the balance of the net income from said trust fund shall be paid to Violet Neal, W.T. Neal, Jr., and Ed. Leigh McMillan for the sole purpose of paying for the education of my son W.T. Neal, Jr., should he not have finished his education at the time of my death, and of making contributions to a *770 corporation, trust or community chest fund or foundation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, or for the prevention of cruelty to children or animals, no part of the earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propoganda or otherwise attempting to influence legislation; or to a domestic fraternal society, order or association operating under the lodge system, to be used exclusively for religious, charitable, scientific, literary or educational purposessuch contribution, to whomsoever made, to be used exclusively in the County of Escambia, State of Alabama, and the County of Calhoun in the State of Florida.
"Should any emergency arise in the life of ... my son, W.T. Neal, Jr., ... or in the life of any child or children of my son, W.T. Neal, Jr., ... during the existence of this trust on account of any disaster or severe illness, or otherwise, whereunder additional funds (that is, funds in addition to those hereinabove provided) should be needed, I request that the trustees of said trust fund shall make the necessary advancements and/or payments to meet such emergency, either from the income or the principal of said trust estate.
"....

"Upon the termination of the trust herein created, the trustees shall divide the corpus of the trust estate among the descendants of my son, W.T. Neal, Jr., such division to be made per stirpes.
"....
"I direct that the trust herein created shall continue during the lives of Violet Neal, W.T. Neal, Jr., and Ed. Leigh McMillan and the life of their survivor, and twenty years thereafter." (Emphasis added.)
On July 23, 1950, W.T. Neal died. On July 28, 1950, his will was probated.
On March 15, 1955, W.T. Jr. married Sara Olivia Beall Weaver. From a previous marriage, she already had two sons, Leon Terrill Weaver II (hereinafter "Terrill"), and James Willett Weaver (hereinafter "James").
On January 1, 1956, the coexecutors funded the trust with the remainder of the assets in the estate, subject only to payment of any remaining debts of the estate.
On January 11, 1956, appellant John Stewart Neal (hereinafter "John") was born to W.T. Jr. and his wife Sara Olivia.
On March 3, 1960, the Escambia County Circuit Court declared John to be the only living descendant of W.T. Jr.
Sometime after March 3, 1960, a daughter, Lauren, was born to W.T. Jr. and his wife Sara Olivia.
On December 19, 1960, the estate of W.T. Neal was settled and the corpus of the trust identified and approved in the Escambia County Circuit Court.
In 1963, a second daughter, Kate, was born to W.T. Jr. and his wife Sara Olivia.
On September 13, 1973, the Adult Adoption Act, codified at §§ 43-4-1 through -4, Ala.Code 1975, became effective. The Adult Adoption Act provided that "[a]ny resident of Alabama over the age of 19 years desiring to adopt another adult person so as to make such person capable of inheriting his real and personal estate may file a petition for an order of adoption...." § 43-4-1. The Act provided that "[f]or the purposes of inheritance of property under the laws of descent and distribution, an adopted person shall bear the same relation to his adopter and the natural and adopted children of the adopter *771 as if he were the natural child of such adopting person." § 43-4-3. The Act provided further that "[t]he provisions of this chapter shall not be construed to affect adversely any rights which have vested prior to the effective date of its enactment...." § 43-4-4.
On September 17, 1973, W.T. Jr. petitioned to adopt his two adult stepsons, his wife Sara Olivia's two adult sons from her former marriage, Terrill and James.
On December 21, 1973, and on December 31, 1973, final orders of adoption were issued for Terrill (then 25 years old) and James (then 21 years old), respectively.
On November 14, 1990, W.T. Jr., the last surviving original cotrustee of the trust, died. Surviving him were, among others, his three natural children, John, Lauren, and Kate, all born to W.T. Jr. and his wife Sara Olivia, and his two adopted sons, Terrill and James, born to Sara Olivia during her prior marriage. The successor cotrustees began dividing among these five issue of Sara Olivia the $6,000 per year in trust benefits payable to the children or descendants of W.T. Jr. Moreover, his death triggered the termination clause of the trust provisions of the will. The trust will terminate on November 14, 2010, 20 years from the November 14, 1990 date of W.T. Jr.'s death.
On January 1, 1991, the repeal of the Adult Adoption Act, §§ 43-4-1 through -4, Ala.Code 1975, became effective. 1990 Ala. Acts No. 90-554.
On January 11, 1996, the successor cotrustees, N.Q. Adams, Kate Neal McNeel, and Lauren Neal Shepard, petitioned the Escambia County Circuit Court for a partial settlement of the trust from "January 1, 1956, through December 1, 1996" and for a declaration that Terrill and James were "children" and "descendants" of W.T. Jr. as contemplated by the will and trust and that they and their descendants as their interests would appear were beneficiaries and remaindermen of the trust.
On June 7, 1996, Terrill and James filed an answer, counterclaim, and cross-claim. In their counterclaim they sued the successor cotrustees, and in their cross-claim they sued John, for the very same declaration of their status and their descendants' status as the declaration sought by the successor cotrustees in their petition for partial settlement. Thereafter, Terrill and James likewise filed a motion for summary judgment for the same declaratory relief and for the denial of the contrary relief sought by John.
On June 11, 1996, John filed his own answer and counterclaim to the petition for partial settlement. In his counterclaim he sought a declaration that Terrill and James were neither "children" of W.T. Jr., grandchildren of W.T. Neal, nor "descendants" of either W.T. Neal or W.T. Jr. entitled to distributions of assets or income from either the estate or the trust; sought an accounting of the assets of the trust; sought removal and replacement of the successor cotrustees; sought an injunction prohibiting the successor cotrustees from distributing trust assets and income to "recipients not entitled to receive the same"; sought damages for the successor cotrustees' alleged breaches of fiduciary duties, distribution of trust assets or income "to parties not entitled to the same," and suppression of facts about improper distribution of trust assets; and sought attorney fees. John's answer to the successor cotrustees' petition for partial settlement raised the same issues as his counterclaim and the additional issue of the successor cotrustees' alleged "unclean hands." The answer also asserted "that the subject Trust provides for charitable contributions in the State of Florida and the Attorney *772 General of and for that State should likewise be made a party hereto."
On July 30, 1996, John moved to recuse the trial judge, Judge Byrne, on the ground that he had been a partner in the law firm that had previously interpreted provisions of W.T. Neal's will.
On October 7, 1996, after seeking an opinion from the Alabama Judicial Inquiry Commission, Judge Byrne recused himself from the case. That same day, October 7, 1996, the case was reassigned to Judge Brogden.
On January 17, 1997, John, the successor cotrustees, and other parties entered into a settlement agreement. The settlement agreement recites, in pertinent part, that John had questioned the right of Terrill and James to "share in the income and principal of the trust," that he had requested emergency distributions from the trust, and that he had asserted a counterclaim to the successor cotrustees' petition for partial settlement. The settlement agreement further recites:
"WHEREAS, the parties hereto are desirous of settling all of the suits, claims and differences among themselves, including but not limited to all issues which are or might be asserted in the Litigation and all claims arising under or by virtue of the Will.
"....
"1. Each party agrees that Terrill Neal and James Willett Neal, as adopted children of W.T. Neal, Jr., are entitled to share in the income of the Trust as children of W.T. Neal, Jr., and to share in the remainder of the Trust as descendants of W.T. Neal, Jr., and that the descendants of Terrill Neal and James Willett Neal are entitled to share in the income of the Trust as the descendants of a child of W.T. Neal, Jr., and to share in the remainder of the Trust as the descendants of W.T. Neal, Jr.
"....
"5. The Trustees shall request from the Court the following construction of the Will with which request the other parties hereto do concur:
"a. That Terrill Neal and James Willett Neal, as adopted children of W.T. Neal, Jr., are entitled to share in the income of the Trust as children of W.T. Neal, Jr., and to share in the remainder of the Trust as descendants of W.T. Neal, Jr., and that the descendants of Terrill Neal and James Willett Neal are entitled as their interest appears to share in the income of the Trust as the descendants of a child of W.T. Neal, Jr., and to share in the remainder of the Trust as the descendants of W.T. Neal, Jr.
"b. That the provision of Article IV of the Will providing:
"`Should any emergency arise in the life of my wife, Violet Neal, or in the life of my son, W.T. Neal, Jr., or any member of his immediate family, or in the life of any child or children of my son, W.T. Neal, Jr., or his or their immediate family or families, during the existence of this trust on account of any disaster or severe illness, or otherwise, whereunder additional funds (that is, funds in addition to those hereinabove provided) should be needed, I request that the trustees of said trust fund shall make the necessary advancements and/or payments to meet such emergency, either from the income or the principal of said trust estate.'
"be construed so as to make clear that any such distribution thereunder shall be in the Trustees' sole discretion, but that an emergency under said provision shall not include the need or request for funds to be used by a beneficiary in *773 their trade or business or for the making or preservation of investments, or to offset losses experienced in same, or to pay obligations to their creditors.
"c. That the prior construction of Article IV of the Will be clarified so as to make absolutely clear that the Trustees may make charitable contributions to individuals residing or coming from Escambia County, Alabama and Calhoun County, Florida, who are themselves objects of charity, which funds may be used by said individuals either inside or outside said counties for their benefit, for example, for the individuals' educational or medical expenses; and to further make clear that the Trustees may make such charitable contributions either to said objects of charity or pay same directly to third parties no matter where located, for the benefit of such individuals who are the object of charity.
"6. In consideration of the terms hereof Lauren Neal Shepard, Peter Shepard, Kate Neal McNeel, Joseph Wilkinson McNeel, III, Terrill Neal, Patti Graham Neal, James Willett Neal, Beth Lubel Neal, John Stewart Neal, and Rebecca Reynolds Neal agree that they will not request and hereby waive any right to request or receive any loan from the Trust at any time in the future for any reason, known or unknown, anticipated or unanticipated.
"....
"8. The Trustees have made statements reflecting the acts and doings of the Trust through December 31, 1996, available to the parties hereto; the parties hereto find them acceptable; and the Trustees shall present for Court approval an accounting of the acts and doings of the trustees of the Trust through December 31, 1996, as a partial settlement of the Trust, with which the parties hereto do concur.

"9. John Stewart Neal agrees to dismiss his Counterclaim with prejudice.
"10. All parties hereto do hereby release, remise and forever discharge each other from any and all claims or causes of action which any such party may have against any other party heretofore or hereafter arising from any acts, omissions or occurrences prior to the effective date hereof, except that the Trustees do not release any party of any obligation that they may have to the Trust.
"11. Each party has entered into this settlement stipulation voluntarily and with the advice of counsel chosen by them. Each party hereto expressly acknowledges that he or she is entering into this settlement stipulation based solely on the terms set forth herein." (Emphasis added.)
The settlement agreement provided certain benefits to John in addition to his existing right to share in the income and the remainder of the trust. The settlement agreement entitled John to buy 950 shares of Cedar Creek Land and Timber Company stock from Mrs. W.T. Jr. for one dollar but obligated him to assume her indebtedness to the trust secured by that stock. The settlement agreement further provided that the trust would, by agreement with the First National Bank of Brewton, assist John in causing a judgment against him and in favor of the bank on a promissory note to be vacated. This relief required him to pay the bank $300,000 on the debt and required the trust to buy the balance of the note from the bank. Finally, the settlement agreement provided that Terrill would lend John $700,000 on a promissory note from John to Terrill.
On the very same day John executed the settlement agreement, January 17, 1997, he also executed, but did not promptly file *774 or otherwise disclose, an affidavit (hereinafter "`duress' affidavit"):
"I am in litigation with the Trustees of the W.T. Neal, Sr. Trust. The Trustees filed suit against me on 1/11/96 and I filed a countersuit. Due to the hostile acts of the Trustees of the W.T. Neal, Sr. Trust, I have been forced to agree to sign a settlement stipulation under duress (Exhibit A attached). I am under tremendous financial pressure from creditors and the Internal Revenue Service and have absolutely no alternative but to sign the settlement. All of the financial problems are a direct result of the Trustees' interference. They have used their power and money against me. The settlement agreement states that Jim and Terrill Neal are adopted children. They are not. They were adopted as adults. The settlement states in 8-C [sic, should say 5-C] that it is okay for the Trustees to spend money outside of the exclusive geographical area (Escambia County, Alabama and Calhoun County, Florida) stated in the Will. It is not and I do not have the power to make it okay. This settlement does not even include all the parties to the suit. The Attorney General for the state of Alabama, the Attorney General for the state of Florida, and the appointed guardian for my unborn children were not included.

"In short, I agree with virtually nothing in the settlement and personally do not believe it is legal. Again, I am signing this because I feel I have no choice but to do so." (Emphasis added.)
On January 24, 1997, at the beginning of proceedings before a hearing on the proposed settlement agreement, John's counsel Mr. Presto stated in open court on record:
"Your Honor, excuse me. I was just going to say that I am here on behalf of Mr. Neal, John Stewart Neal, but he is out of town. I am here for him, and he has previously signed a settlement document that is very extensive, and it resolves all of the issues in this case including not only the issues raised by the original petition for declaratory judgment but all of the issues raised within our counterpetition. He has asked that I be here in his place."
After counsel for other parties introduced themselves and identified their clients, Judge Brogden advised the parties on the record that he was a member of the President's Advisory Committee for Jefferson Davis Community College and that he was a member of the board of directors for the Atmore YMCA. He stated that he understood that both Jefferson Davis Community College and the Atmore YMCA had received money from the trust. He asked the parties to state on the record whether they perceived any disqualification to his presiding over their case or whether they objected to his presiding. No one asserted any disqualification or objection. After the hearing, the parties in person or through their attorneys signed a document reading:
"On this the 24th day of January 1997, the Judge disclosed in the record that he is a member of the President's Advisory Committee for Jefferson Davis Community College, and a member of the Atmore YMCA Board of Directors, and on one or more occasions, the [W.T.] Neal Trust has made monetary contributions to these two organizations. The undersigned parties and their respective attorneys agree that the Judge's said relationship is immaterial or his financial interest, if any, is insubstantial, and if such disqualifies the Judge, he is no longer disqualified, and may participate in this proceeding."
John himself was one of the signatories.
On January 30, 1997, the Escambia County Circuit Court, through Judge *775 Brogden, entered a Rule 54(b), Ala. R. Civ. P., final judgment pursuant to the settlement agreement, the settlement hearing, and the evidence introduced at the settlement hearing. The judgment granted all of the relief contemplated by the settlement agreement, including the constructions of W.T. Neal's will and its trust provisions, and including the dismissal of John's counterclaim, and including the approval of the successor cotrustees' accounting and the settlement of the trust through December 31, 1996. The judgment specifically held that W.T. Jr.'s adoptive sons Terrill and James, and their descendants, like W.T. Jr.'s three natural children and their descendants, were entitled to share in the income and the remainder of the trust.
Neither John nor any other party appealed the January 30, 1997 Rule 54(b) judgment.
On October 16, 1998, the successor cotrustees petitioned for a partial settlement of the trust from January 1, 1997 through December 31, 1997. In response to this petition, John filed an answer, counterclaim, and cross-claim and, later, an amended answer, counterclaim, and cross-claim. John's pleadings contested the findings and holdings of the January 30, 1997 judgment and the validity of that judgment itself. The claims asserted by John and pertinent to the appeals before us sought an order vacating the January 30, 1997 judgment, sought restoration of the trust income paid to Terrill and James as "children" of W.T. Jr., sought a declaratory judgment that the respective adult adoptions of Terrill and James were void, and sought damages from the successor cotrustees and removal and replacement of the successor cotrustees for their torts in the management of the trust through the year 1996.
Thereafter, the successor cotrustees and Terrill and James filed their respective answers to John's counterclaim and cross-claim as amended and their respective motions for summary judgment on his claims. They supported their motions for summary judgment with evidentiary materials and briefs; and John opposed the motions for summary judgment with evidentiary materials and his own briefs. Among John's evidentiary materials, not filed until August 20, 1999, was the "duress" affidavit (already quoted in this opinion) he had sworn and executed two years and seven months earlier, on January 17, 1997.
Judge Brogden entered partial summary judgment on each of the two motions for summary judgment, first by interlocutory order, and then by final Rule 54(b) appealable order. The first of the two final summary judgments reads:
"The motion of Terrill Neal, James Willett Neal, and their minor and unborn descendants for a final judgment as to the `adoptive child' issue came on for hearing on March 2, 2000. John Stewart Neal was represented by Reo Kirkland, Jr. and also by James Allen Main, whose notice of appearance as attorney for John Stewart Neal was filed in this Court on or about the 8th day of February, 2000. Other parties were before the Court either in person or by their attorneys.
"(1) On January 30, 1997, this Court entered a Final Decree determining that Movants as adopted children or children of adopted children of W.T. Neal, Jr., were beneficiaries under the trust created by the Will of W.T. Neal, deceased, which resolved the `adoptive child' issue adverse to John Stewart Neal. John Stewart Neal was before the Court represented by counsel at the time of the Final Decree and no appeal was taken from the Final Decree.

*776 "(2) On April 29, 1999, John Stewart Neal, notwithstanding the January 30, 1997 Final Decree filed a counterclaim in which he again sought to obtain a ruling that Movants were not beneficiaries and sought to set aside the Final Decree of January 30, 1997.
"(3) On June 28, 1999, Movants filed a Motion for Summary Judgment as to the `adoptive child' issue. On the 7th day of December, 1999, this Court by bench note granted Movants' Motion for Summary Judgment as to the `adoptive child' issue. At that time the Court did not rule as to whether or not the December 7, 1999 Order was or was not a final decree.
"(4) The finality of the January 30, 1997 Final Decree and/or the right of the Movants to take as beneficiaries under the W.T. Neal trust are separate from and unrelated to any other issues pending before this Court. There is no just reason for delay and the Court expressly directs the entry of a Final Judgment pursuant to Rule 54(b), [Ala. R. Civ. P.].
"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that this Court's Order of December 7, 1999 granting Movants' Motion for Summary Judgment filed June 28, 1999 as to the `adoptive child' issue be and the same hereby is amended to make it a Final Judgment.
"The Court reserves jurisdiction of all parties and of all issues other than the `adoptive child' issue and enters a Final Judgment pursuant to Rule 54(b), [Ala. R. Civ. P.,] on this the 10th day of April, 2000.
 "/s/ Joseph B. Brogden
 "Joseph B. Brogden
 "Circuit Judge in Equity Sitting"
The second of the two final judgments reads:
"On January 30, 1997 this court entered a final decree which, among other things, determined that the adopted children of W.T. Neal, Jr. were beneficiaries under the trust created by the Will of W.T. Neal and approved the accounts of the Trustees of the W.T. Neal Trust through December 31, 1996. The decree also dismissed with prejudice a counterclaim filed by John Stewart Neal against the Trustees.
"The instant proceeding was initiated by the Trustees of the W.T. Neal Trust seeking to provide an accounting for the year 1997 and seeking instructions concerning the dissemination of trust information. John Stewart Neal has filed a counterclaim and cross-claim, and amendments thereto, which, among other things, seek to set aside the January 30, 1997 decree and to assert claims against the Trustees with respect to matters occurring prior to January 1, 1997.
"N.Q. Adams, Kate Neal McNeel, and Lauren Neal Shepardwho are the trustees of the W.T. Neal Trustfiled a summary judgment motion with respect to John Stewart Neal's claims that the January 30, 1997 decree should be set aside and also with respect to all claims asserted against them by John Stewart Neal relating to matters occurring prior to January 1, 1997.
"By bench note dated December 7, 1999, the court granted said summary judgment motion.
"Petitioners have requested that final judgment be entered pursuant to Rule 54(b) with respect to said ruling on the summary judgment motion.
"Having considered said request, pursuant to Rule 54(b), the Court expressly determines that there is no just reason for delay and expressly directs that final *777 judgment be entered in favor of N.Q. Adams, Kate Neal McNeel, and Lauren Neal Shepard and against John Stewart Neal on his claim that the January 30, 1997 decree should be set aside and on all claims by John Stewart Neal against N.Q. Adams, Kate Neal McNeel, and Lauren Neal Shepard relating to matters occurring prior to January 1, 1997.
"Ordered, adjudged and decreed this the 21st day of July, 2000.
 "/s/ Joseph B. Brogden
 "Circuit Judge"
John timely appealed each of the summary judgments, which are properly before us for review. In addition, however, after the records on appeal were completed by the trial court and filed with us, and after all of the appellate briefs were filed with us, John then filed a "Motion to Supplement the Submission of these Consolidated Appeals."
This motion states that, after the summary judgments were appealed to us, the Judicial Inquiry Commission, upon inquiries by Judge Brogden, issued two advisory opinions. According to the motion, Advisory Opinion No. 00-764 opined that Judge Brogden would be disqualified in this case "due to an appearance of impropriety if the college is a member of the charitable class or if the college is likely to be affected by the outcome of the case." (Emphasis added.) Advisory Opinion No. 01-780, as attached to John's motion to us, recites:
"[T]he college is a member of the charitable trust class.... [Judge Brogden] asks the Commission to reconsider its conclusion that resignation from the committee would not remove his disqualification."
Advisory Opinion No. 01-780 then opines, in pertinent part:
"When a circumstance causing disqualification of a judge is removed, this oftentimes removes any reasonable question as to the judge's impartiality. However, this is not always true; in some situations, a prior relationship may cause a current question as to impartiality under Canon 3C(1). Upon careful of review of the matter, the Commission remains of the opinion that, under the facts in this case, the question as to the judge's impartiality arising from his membership on the President's college advisory committee has not been removed by his resignation from the committee.
"With regard to other cases involving petitions for partial accounting of the same trust, the Commission is of the opinion that the judge is disqualified to hear the same to the extent that irregularities alleged apply to a period the judge was a member of the President's committee."
John's motion to us also supplies a copy of an order, dated May 29, 2001, and signed by Judge Brogden, which reads:
"Based on the Judicial Inquiry Commission's Advisory Opinion 01-780, copy of which is attached hereto, the undersigned judge recuses in this case, ex mero motu."
John's motion to us concludes:
"Here, there is no need for speculation as to whether Judge Brogden was disqualified when he rendered the decree on January 30, 1997. The Judicial Inquiry Commission has concluded that Judge Brogden was disqualified. Accordingly, all prior participation by Judge Brogden in these proceedings which are before this Court on appeal violated the due process guaranties of the litigants in this case under the Fourteenth Amendment of the United States Constitution. It is respectfully submitted that the foregoing decisionsAetna *778 Life Insurance Co. v. Lavoie [, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986),] and Tumey [v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) ] require the reversal of these consolidated cases on due process grounds.
"WHEREFORE, Appellant John Stewart Neal, moves the Court to reverse the orders before the Court on these consolidated appeals, including the January 30, 1997 decree, and render a judgment vacating and setting aside that decree and those orders, and remanding these cases to the Circuit Court of Escambia County, Alabama, for further proceedings before a judge who is not disqualified."

Analysis
We will first address John's motion to supplement his submissions on these appeals. This motion seeks relief from the January 30, 1997 final judgment on the ground of Judge Brogden's disqualification. Such relief would depend on resolution of the issue of whether the Judicial Inquiry Commission advisory opinions and Judge Brogden's ex mero motu recusal order, all issued long after the entry of the January 30, 1997 judgment, void or invalidate that judgment. This issue is not properly before us, because no party has presented this issue to the trial court, the trial court has not issued a ruling on this issue, and no party has appealed such a ruling to us and included a record of proceedings on such a ruling in the record on appeal. The resolution of this main issue would depend not only on the subissue of whether Judge Brogden was, in fact and in law, disqualified at the time of the proceedings culminating in the January 30, 1997 judgment but also on the additional subissues of whether the parties' (including John's) express remittal of any such disqualification was effective, whether any such disqualification was waived by the parties' (including John's) failure to object, whether review of a defect in the judgment attributable to such a disqualification is waived by the parties' (including John's) failure to appeal the judgment, and whether the judgment is subject to collateral attack. These subissues have not been presented to the trial court, developed before the trial court, or decided by the trial court, and no error in any such decision has been properly preserved or presented for appellate review.
"The function of an appeal is to obtain judicial review of the adverse rulings of a lower court; thus, it is a well-settled rule that an appellate court's review is limited to only those issues that were raised before the trial court. Issues raised for the first time on appeal cannot be considered." Beavers v. County of Walker, 645 So.2d 1365, 1372 (Ala.1994) (citations omitted). "This court is bound by the record before it; and the burden is on the appellant to perfect and prosecute the appeal as required by law and the rules of this court and to see that all proceedings before the trial court are contained in the record on appeal." Zills v. Brown, 382 So.2d 528, 530 (Ala.1980).
None of the requisites for our appellate jurisdiction to grant the relief sought by John's motion exists. Cf. Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (cited by John, but precise recusal issue on appeal had already been presented to the forum of the judge to be recused, 475 U.S. 817-19, 106 S.Ct. 1580). Therefore, the motion will be denied.
We will next address the issues of the consolidated appeals themselves. The doctrine of res judicata bars relitigation of (1) the same issues (2) previously litigated between substantially identical parties and (3) finally adjudicated on the merits (4) by *779 a court of competent jurisdiction, Robinson v. Holley, 549 So.2d 1, 2 (Ala.1989), and Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190, 1199 (Ala. 1978). The issues John seeks to pursue before us on the merits of his disputes with Terrill, James, and the successor cotrustees are the same as the issues litigated among these very same parties in the prior litigation framed by the successor cotrustees' 1996 petition for partial settlement, Terrill and James's 1996 answer, counterclaim, cross-claim, and motion for summary judgment, and John's own 1996 answer and counterclaim; settled by and among these same parties in their January 17, 1997 settlement agreement; and finally adjudicated on the merits in the January 30, 1997 judgment by the same circuit court that entered the partial summary judgments now before us on appeal. Therefore, John cannot receive any appellate relief from us on the merits of his claims to oust Terrill and James and their descendants as beneficiaries and remaindermen of the trust or his claims to recover damages from, or equitable relief against, the successor cotrustees for the various torts John alleges they committed before the date of the January 30, 1997 judgment, unless that judgment is either void for want of personal jurisdiction, subject-matter jurisdiction, or due process of law, see Seventh Wonder v. Southbound Records, Inc., 364 So.2d 1173, 1174 (Ala. 1978), Smith v. Clark, 468 So.2d 138, 141 (Ala.1985), Cassioppi v. Damico, 536 So.2d 938, 940 (Ala.1988), Pollard v. Etowah County Comm'n, 539 So.2d 225, 228 (Ala. 1989), Satterfield v. Winston Indus., Inc., 553 So.2d 61, 64 (Ala.1989), Fisher v. Amaraneni, 565 So.2d 84, 87 (Ala.1990), Hughes v. Cox, 601 So.2d 465, 467-68 (Ala. 1992), Greene v. Connelly, 628 So.2d 346, 351 (Ala.1993), and Rule 60(b)(4), Ala. R. Civ. P., or voidable on a ground contemplated by § 19-3-5, Ala.Code 1975, or by Rule 60(b)(6), Ala. R. Civ. P., which John invokes.
While John does not and cannot deny the jurisdiction of the trial court over John's person, he advances several arguments to the effect that the January 30, 1997 judgment is void for want of jurisdiction over the subject matter or for a deprivation of due process of law. We will discuss two of these arguments.
First, John argues that the failure to notify the Florida attorney general of the 1996 petition for partial settlement deprived the court of jurisdiction to render the judgment. John does not cite any analogous case or supportive statute.
The trust provides that certain income shall be contributed to some charitable or otherwise benevolent entity to be used for charitable or otherwise benevolent purposes in Escambia County, Alabama, or Calhoun County, Florida. The trust does not name or describe any identifiable beneficiary of this largess. The trust does not vest in any named or identifiable person or entity in Florida or elsewhere any enforceable right to any of this portion of the income; and no statute requires notice to the Florida attorney general.
On the one hand, a failure to join necessary or indispensable parties may void a judgment. See Rogers v. Smith, 287 Ala. 118, 248 So.2d 713 (1971); cf. Holland v. City of Alabaster, 566 So.2d 224, 228 (Ala.1990) ("the trial court must have jurisdiction over [a necessary party] before proceeding to adjudicate any issues affecting that entity's interests"). But see Long v. Vielle, 549 So.2d 968 (Ala.1989), and J.R. McClenney & Son, Inc. v. Reimer, 435 So.2d 50 (Ala.1983). On the other hand, neither the Florida attorney general nor any other person or entity in Florida seems to have been a necessary or indispensable party to the proceedings on the *780 1996 petition for partial settlement in the case now before us.
The Committee Comments to Rule 19, Ala. R. Civ. P., note that this rule, in pragmatic terms, embodies the preexisting common law governing the joinder of necessary or indispensable parties. Rule 19(a) defines who may be necessary or indispensable in two distinct categories.
Rule 19(a)(1) is limited to persons whose absence would prevent complete relief from being "accorded among those already parties." In the case before us, "those already parties," John, Terrill, James, other named or generically specified beneficiaries, and the successor cotrustees, did not, in order to obtain whatever relief they sought on the merits, need the participation, competition, or challenges of any Florida official or domiciliaries.
Rule 19(a)(2) is limited (among other limitations) to persons who claim "an interest relating to the subject of the action." Yet the charitable or beneficent provisions of the trust, as we have already explained, do not sufficiently identify any person or entity to confer on him, her, or it standing to claim an interest in the charitable or beneficent largess of the trust. Indeed, this nonidentification is the feature that constitutes the charitable aspect of the trust. "[T]he thing given becomes a charity where the uncertainty of the recipients begin[s]." State ex rel. Carmichael v. Bibb, 234 Ala. 46, 51, 173 So. 74, 78 (1937). "[T]he nature of a `charity,' as that term is used in courts of equity, requires that its beneficiaries should be an uncertain body or class. Its purposes must be public." Moseley v. Smiley, 171 Ala. 593, 596, 55 So. 143, 143 (1911).
Therefore, the attorney general of Alabama, who did receive notice, was the only proper party, and the attorney general of Florida was neither an indispensable party, a necessary party, nor even a proper party, to enforce the charitable aspect of the trust. Bibb, supra; Israel v. Nat'l Bd. of YMCA, 117 R.I. 614, 369 A.2d 646 (1977). We will explain.
In Bibb, the trustor bequeathed certain property to the three trustees, "all of Anniston," 234 Ala. at 49, 173 So. at 76, to establish a free, nonsectarian hospital in Anniston; but the trustees or their successors misspent, mismanaged, and converted much of the corpus and income without establishing the hospital. The Alabama Supreme Court held that the Alabama attorney general was the proper party to enforce the charitable purposes of a trust that did not identify the cestuis que trust sufficiently definitely to vest them with standing to sue.
In Israel, supra, the Supreme Court of Rhode Island held that only the attorney general of the state where the trust is being administered by the trustees is the proper party to protect the interests of "indefinite charitable beneficiaries" and that the attorneys general of other states where some of the "indefinite charitable beneficiaries" may be domiciled are not proper parties, much less necessary or indispensable parties. 117 R.I. 614, 620-22, 369 A.2d 646, 651-52. The Israel court opined that a contrary rule, one conferring necessary-party status on the attorneys general of all foreign states where "indefinite charitable beneficiaries" reside, would cause "chaos." 117 R.I. at 621 n. 4, 369 A.2d at 651 n. 4. We agree.
Accordingly, we hold that the Alabama attorney general was the proper party and the only proper party to enforce the charitable or otherwise beneficent purposes of the trust in the case before us and that the Florida attorney general was not a proper party, much less a necessary or indispensable party. Therefore, the absence of notice of the 1996 petition for partial settlement *781 to the Florida attorney general does not impair the January 30, 1997 judgment. Inasmuch as the Alabama attorney general did receive notice, we need not decide whether he was a necessary or indispensable party as distinguished from a proper party.
Second, John argues that the will, by its terms, and the Adult Adoption Act, by its terms and as applied in this case, did not entitle Terrill, James, or their descendants to receive trust income or residue; that, therefore, the will and the act did not authorize the trial court to rule to the contrary; and that, therefore, the trial court lacked subject-matter jurisdiction to render the January 30, 1997 judgment approving the sums Terrill and James had already received and declaring their status as "children" and "descendants" of W.T. Jr. entitled, together with their own descendants as their interests would appear, to trust income and residue. Thus, John contends that this want of subject-matter jurisdiction, as he perceives it, also voids the judgment. Likewise, John argues that this same perceived misapplication of the Adult Adoption Act and this same perceived misinterpretation of that act and of the will constitute a denial of due process of law which voids the judgment. We will address both of these variations of this voidness argument.
We need not, and do not, decide whether the terms of the will or the terms or application of the Adult Adoption Act do or do not entitle Terrill, James, and their descendants to take from the trust. Even if they do not, John confuses legal error with want of subject-matter jurisdiction or want of due process of law.
"It is claimed that the judgment is void because it does not comply with the law of the State of Alabama. The simple fact that a court has erroneously applied the law does not render its judgment void."
Halstead v. Halstead, 53 Ala.App. 255, 256, 299 So.2d 300, 301 (1974). See also Smith v. Clark, supra.
"A judgment is void only if the court which rendered it [1] lacked jurisdiction of the subject matter, or [2] of the parties, or [3] if it acted in a manner inconsistent with due process."
Seventh Wonder, 364 So.2d at 1174. This same statement of law appears in Smith v. Clark, Cassioppi, Pollard, Satterfield, Fisher, Hughes, and Greene, supra.
First, the trial court had subject-matter jurisdiction of the issues framed by the successor cotrustees' 1996 petition for partial settlement and by the claims and other pleadings filed by Terrill, James, and John in that same litigation.
"`As part of its general jurisdiction over trusts, the court of equity has power to instruct and advise the trustee as to his powers and duties, on his request or at the request of a beneficiary. Hence many doubts arising from ambiguity of the trust instrument or uncertainty of law regarding the powers of a particular trustee may be resolved.'"
Adams v. Farlow, 516 So.2d 528, 555 (Ala. 1987) (quoting Bogert, The Law of Trusts & Trustees § 559 (Rev.2d ed.1980)) (some emphasis original; some added). See also § 6.04(b), Amendment 328, Alabama Constitution of 1901; § 12-11-30(1) and (6), Ala.Code 1975; § 12-11-31(1) and (4), Ala. Code 1975; § 12-11-40, Ala.Code 1975; and § 12-11-41, Ala.Code 1975. Second, John does not, and cannot, deny that the trial court likewise had personal jurisdiction over him to render a judgment adverse to him.
Third,
"[i]t is established by the decisions in this and in Federal jurisdictions that *782 due process of law means notice, a hearing according to that notice, and a judgment entered in accordance with such notice and hearing."
Frahn v. Greyling Realization Corp., 239 Ala. 580, 583, 195 So. 758, 761 (1940) (emphasis added). The rule that a want of due process, so defined, voids a judgment is not redundant with the rule that a want of personal jurisdiction likewise voids a judgment, for a person already effectively made a party to litigation could, on some critical motion or for some critical proceeding within that litigation, be deprived of the "notice, a hearing according to that notice, and a judgment entered in accordance with such notice and hearing," required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Frahn, supra. See Winhoven v. United States, 201 F.2d 174 (9th Cir.1952), Bass v. Hoagland, 172 F.2d 205 (5th Cir.1949), Cassioppi, supra, and Seventh Wonder, supra. However, the misinterpretations and misapplications of law that John ascribes to the aspects of the January 30, 1997 judgment about the distributions to and the status and rights of Terrill, James, or their descendants did not deprive John of due process of law. Halstead, supra. See also Cassioppi, supra, Smith v. Clark, supra, and Seventh Wonder, supra. Because John received notice, employed counsel who advised and represented him, actively litigated his cause, entered the January 17, 1997 settlement agreement, attended (through counsel) the hearing on the 1996 petition for partial settlement, interposed no objections at the hearing, obtained the January 30, 1997 judgment conforming to the settlement agreement, and did not appeal that judgment, he can hardly contend that the judgment is void for a deprivation of due process of law. Frahn, supra.
John does cite Doby v. Carroll, 274 Ala. 273, 147 So.2d 803 (1962), on the topic of judgments void for want of subject-matter jurisdiction. The distinctions between Doby and the case now before us, however, are stark and dispositive. In Doby, some years before the effective date of the Adult Adoption Act, the guardian of an adopter who had become mentally incompetent, petitioned the probate court to vacate the adopter-ward's prior adoption of an adult. The pertinent ground of the petition was
"[t]hat the decree of the probate court was void on the face of the record because the record showed that the appellant was an adult and the laws of this state do not authorize the adoption of one adult by another."
274 Ala. at 274, 147 So.2d at 804. Doby continues:
"After a hearing, the probate court entered a decree setting aside its decree of November 30, 1961, on the ground that the court was without jurisdiction to order the adoption because our statutes do not permit the adoption of adults.
"In Alabama, the right of adoption is purely statutory and in derogation of the common law, and the probate court acts as a court of limited jurisdiction in adoption proceedings, and unless the statute by express provision or necessary implication confers the right to adoption, such right does not exist. Franklin v. White, 263 Ala. 223, 82 So.2d 247 [(1955)]; Claunch v. Entrekin, 272 Ala. 35, 128 So.2d 100 [(1961)].
"....
"Not only the entitlement and placement in the Code, but a reading of Tit. 27, §§ 1-9, Code 1940, adds weight to the apparent legislative intention to restrict adoption to minor children. Moreover, there is no procedure of any kind provided in our statutes for the adoption of an adult.

*783 "We, therefore, hold that the adoption statutes, Tit. 27, §§ 1-9, of this state, in effect in 1961, did not and do not authorize the adoption of an adult.
"....
"It is settled that where it appears on the face of the record that the judgment or decree is void, the court rendering it has inherent power to vacate it at any time, subsequent to its rendition, and such power is not dependent on statute....
"....
"Here, the proceedings for the adoption of appellant in the Probate Court of Mobile County show on the face of the record that appellant was an adult when his adoption was attempted. Since our statutes do not authorize that court, acting as a court of limited jurisdiction, to approve the adoption of an adult, the decree was void and the court properly set it aside."
274 Ala. at 274-76, 147 So.2d at 804-05. After Doby was decided, but before Terrill and James were adopted as adults, the Legislature, in the Adult Adoption Act, expressly conferred subject-matter jurisdiction on probate courts to entertain petitions for the adoption of adults. Terrill and James were adopted during the effective period of the Adult Adoption Act.
Moreover and more pertinently, in the case now before us the issue is not the jurisdiction of the probate court to entertain W.T. Jr.'s petition to adopt Terrill and James as adults, but the jurisdiction of the circuit court, a court of general jurisdiction, § 6.04(b), Amendment 328, Alabama Constitution of 1901, and Ex parte Union Planters Bank & Trust Co. of Memphis, Tenn., 249 Ala. 461, 31 So.2d 596 (1947), to entertain the 1996 petition for partial settlement and the accompanying claims among the parties. Therefore, Doby does not support John's argument that the January 30, 1997 judgment is void.
The trial court had jurisdiction, whether or not the trial court erred in exercising it. Smith v. Clark, supra, and Halstead, supra. Because the judgment is not void, John can receive appellate relief from us only if the judgment is voidable.
In support of his arguments that the judgment is voidable, John first cites § 19-3-5:
"Whenever any trustee shall file any annual, partial or final settlement in any court having jurisdiction thereof, the court shall, at the request of such trustee, require that notice thereof be given in the same manner as required by law in cases of final settlements, and any order or judgment of the court on such settlement after such notice shall be final and conclusive as to all items of receipts and disbursements, and other transactions and matters shown therein, and as to all fees and compensation fixed or allowed to any such trustee and attorney, and appeals therefrom shall and must be taken in the manner provided for from any other final judgments of such court. Thereafter, at any time prior to final settlement, the account may be reopened by the court on motion or petition of the trustee, beneficiary or other party having an interest in the estate, for amendment or revision, if it later appears that the account is incorrect, either because of fraud or mistake."
John argues that, because the settlement approved by the January 30, 1997 judgment was only partial as distinguished from final, and because, he says, it was incorrect for fraud or mistake, "the account [should] be reopened."
John's first ground for § 19-3-5 relief is mistakethat "the account is incorrect... because of ... mistake." John, however, *784 claims only mistakes of law, not mistakes of material fact, by the trial court.
Traditionally, the law has recognized only a mistake of material fact, and not a mistake of law, as ground to avoid the legal consequence of an act done by the mistaken person as a result of the mistake. American Nat'l Fire Ins. Co. v. Hughes, 624 So.2d 1362 (Ala.1993); Higgins v. Douglas, 572 So.2d 1259 (Ala.1990); and Wal-Mart Stores, Inc. v. Green, 740 So.2d 412 (Ala.Civ.App.1999). Moreover, one provision of a Code section will not be construed to nullify another provision of the same Code section if a different and reasonable construction will reconcile both provisions. Tucker v. Molden, 761 So.2d 996 (Ala.2000). See Reid v. City of Birmingham, 274 Ala. 629, 150 So.2d 735 (1963). See also Ex parte Jackson, 625 So.2d 425 (Ala.1992).
The cardinal purpose of the appeals that § 19-3-5 mandates "shall and must be taken" even from judgments on partial settlement, is the review or foreclosure of claims of mistakes of law. This provision, together with the related provision that judgments even on partial settlements "shall be final and conclusive" on all included matters, would be nullified by a construction of the last sentence of § 19-3-5 that would allow an account to be reopened to correct a mistake of law in the judgment in the absence of a timely post-judgment motion or a timely appeal. Therefore, we hold that the last sentence of § 19-3-5 contemplates only mistakes of material fact, not mistakes of law, made by the trial judge and incorporated in the judgment.
One mistake John claims is the trial judge's interpretation and application of the Adult Adoption Act. Another mistake he claims is the trial judge's proceeding in the absence of the Florida attorney general. Regardless of whether or not the trial judge was mistaken on the merits of either of these issues, such mistakes would be only of law. Therefore, these claims are unavailing to John.
Further pursuing his argument of mistake, John describes several questionable transactions by the successor cotrustees. John does not, however, establish any mistake of material fact by the trial court about any of these transactions. A mistake of law by the trial court in approving the accounting, if the trial court made such a mistake, would not constitute the "mistake" contemplated by § 19-3-5.
Equally fatal to John's mistake argument is the doctrine of invited error. By his January 17, 1997 agreement, John preapproved every finding and holding in the January 30, 1997 judgment. Then, at the settlement hearing preceding the rendition of the judgment, John failed to develop any record on any of his suspicions of, or charges against, the successor cotrustees and thereby failed to disabuse the trial court of any mistake that would affect the judgment. A party cannot win a reversal on an error that party has invited the trial court to commit. Ex parte King, 643 So.2d 1364 (Ala.1993), State Farm Mut. Auto. Ins. Co. v. Humphres, 293 Ala. 413, 304 So.2d 573 (1974), and Thompson v. Magic City Trucking Service, 275 Ala. 291, 154 So.2d 306 (1963).
John's next § 19-3-5 argument is that the January 30, 1997 judgment "is incorrect... because of fraud." John argues that the opposing parties fraudulently induced him to enter the settlement agreement, thereby prevented him from alerting the trial court to concealed or falsified facts, and thereby committed fraud on the court.
John's first premisethat his opponents defrauded him into settlingfails because the record conclusively disproves the reasonable *785 reliance that is essential to any fraud claim. See Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997). Because John's first premise fails, his conclusion of fraud on the court likewise fails. We will explain.
John's charges of fraud against the opposing parties are based essentially on the same facts as his claims of mistake by the trial court. John implies that his opponents falsely stated or fraudulently concealed the law governing the right vel non of Terrill and James to take as beneficiaries and remaindermen of the trust and the law governing the right vel non of the trial court to proceed in the absence of the Florida attorney general. He further charges or implies that the trustees falsely stated or fraudulently concealed the facts of various trust transactions John questions. We need not decide whether any of John's largely conclusory showings of false statements or concealed facts or laws would satisfy the essential element of false statement or wrongful concealment in a fraud action against a fiduciary; for John's pleadings in the proceedings on the 1996 petition for partial settlement, his January 17, 1997 settlement agreement with Terrill, James, and the successor cotrustees, and his surreptitious "duress" affidavit, executed on the same day as the settlement agreement but not filed until two years and seven months had passed, all conclusively prove that John doubted or rejected and, indeed, challenged the veracity of his opponents' statements and the completeness of their disclosures on all of these same topics and that John did not base his agreement to the settlement and the judgment on any reliance, much less any reasonable reliance, Foremost, supra, on the truthfulness of any of his opponents' statements or the completeness of any of their disclosures. Therefore, John has not established fraud as a ground for revising or vacating the January 30, 1997 judgment, pursuant to § 19-3-5.
Moreover, in promoting the January 30, 1997 judgment and concealing his January 17, 1997 "duress" affidavit from the court during the proceedings culminating in that judgment, John himself participated in any fraud, if any, on the court. The concealed "duress" affidavit repudiates John's representation, in paragraph 8 of the settlement agreement he executed on the same day, that "the acts and doings of the trust through December 31, 1996" were "acceptable"; but the apparently unrepudiated settlement agreement, together with John's counsel's statements and conduct supporting the settlement and the judgment pursuant to it, encouraged the trial court to conclude that the acts and doings of the trustees were, in fact, acceptable, even if in some respect they were not. A participant in a fraud on a court cannot invoke that fraud as a ground for vacating the judgment obtained by the fraud. Hall v. Hall, 455 So.2d 813 (Ala.1984), and Shapiro v. Shapiro, 280 Ala. 115, 190 So.2d 548 (1966).
Furthermore, any error in the January 30, 1997 judgment resulting from a fraud on the court, if any, was invited by John's entry into the settlement agreement, his concealment of his "duress" affidavit repudiating the settlement agreement, and his counsel's statements and conduct. John is not due relief from invited error. Ex parte King, supra, Humphres, supra, and Magic City Trucking Service, supra.
Last, John invokes Rule 60(b)(6), Ala. R. Civ. P., which provides:
"On motion and upon such terms as are just, a court may relieve a party ... from a final judgement ... for ... (6) any other reason justifying relief from the operation of the judgment."
*786 Patterson v. Hays, 623 So.2d 1142, 1145 (Ala.1993), explains the parameters of Rule 60(b)(6):
"In addition, under Rule 60(b)(6), relief is granted only in those extraordinary and compelling circumstances when the party can show the court sufficient equitable grounds to entitle him to relief, but relief should not be granted to a party who has failed to do everything reasonably within his power to achieve a favorable result before the judgment becomes final; otherwise, a motion for such relief from a final judgment would likely become a mere substitute for appeal and would subvert the principle of finality of judgments. See the Comment to Federal Rule of Civil Procedure 60(b). As the Court held in Nowlin v. Druid City Hosp. Bd., 475 So.2d 469 (Ala.1985), Rule 60 is no substitute for an appeal and is not available to relieve a party from his failure to exercise the right of appeal."
John's chief ground for invoking Rule 60(b)(6) is duress. John describes his duress, in essence, as that he had already spent all of his own money and about $7,700,000 of other people's money, and the successor cotrustees would not lend or distribute still more money to him. He characterizes the successor cotrustees' refusal as wrongful on various theories. He argues that this duress forced him to accept the January 17, 1997 settlement and the January 30, 1997 judgment in return for grossly inadequate benefits. The benefits, as we have recited in our chronology, included stock in Cedar Creek Land and Timber Company, a partial restructuring of John's existing debt, and a provision for a new loan of $700,000.
Rule 60(b)(6) is an equitable remedy, id., as is relief on the ground of duress in particular. See Glass v. Haygood, 133 Ala. 489, 31 So. 973 (1902). John concealed his intent to insist on his claim of duress, memorialized in his covert January 17, 1997 affidavit, until long after he had received the benefits of the January 17, 1997 settlement agreement and the January 30, 1997 judgment rendered pursuant to the agreement. This covert affidavit proves John's intent to mislead both his opponents and the court about the fact of his own disapproval of the successor cotrustees' accounts and the parties' mutual settlement, in order to induce them to proceed with the settlement, the judgment, and the grant of the benefits of whatever value to John. Having received the benefits, John seeks to renege on his own concessions.
"This Court has recognized that one `who seek[s] equity must do equity' and `one that comes into equity must come with clean hands.' The purpose of the clean hands doctrine is to prevent a party from asserting his, her, or its rights under the law when that party's own wrongful conduct renders the assertion of such legal rights `contrary to equity and good conscience.'"
J & M Bail Bonding Co. v. Hayes, 748 So.2d 198, 199 (Ala.1999) (citations omitted). Therefore, neither Rule 60(b)(6) in general nor John's claim of duress in particular entitles John to relief from the January 1997 judgment.

Conclusion
The January 30, 1997 judgment forecloses the relief on the merits that John seeks from his opponents, the appellees. Moreover, John has not established any right to relief from that judgment and has not demonstrated the existence of a genuine issue of material fact, Rule 56(c)(3), Ala. R. Civ. P., in opposition to the appellees' assertion of res judicata. Therefore, both summary judgments against John and in favor of the appellees must be *787 affirmed, and John's "Motion to Supplement the Submission of these Consolidated Appeals" must be denied.
1991439AFFIRMED; MOTION DENIED.
1992202AFFIRMED.
MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, HARWOOD, and WOODALL, JJ., concur.

On Applications for Rehearing
JOHNSTONE, Justice.
APPLICATIONS OVERRULED.
MOORE, C.J., and HOUSTON, LYONS, BROWN, HARWOOD, and WOODALL, JJ., concur.
SEE, J., dissents.
SEE, Justice (dissenting).
I concurred in the opinion on original submission in this case. On John Stewart Neal's application for a rehearing, however, I am persuaded that that opinion should be withdrawn and another substituted for it because it erroneously construes the word "mistake" in the last sentence of § 19-3-5, Ala.Code 1975, to mean only a "mistake of fact."
Section 19-3-5, Ala.Code 1975, provides:
"Whenever any trustee shall file any annual, partial or final settlement in any court having jurisdiction thereof, the court shall, at the request of such trustee, require that notice thereof be given in the same manner as required by law in cases of final settlements, and any order or judgment of the court on such settlement after such notice shall be final and conclusive as to all items of receipts and disbursements, and other transactions and matters shown therein, and as to all fees and compensation fixed or allowed to any such trustee and attorney, and appeals therefrom shall and must be taken in the manner provided for from any other final judgments of such court. Thereafter, at any time prior to final settlement, the account may be reopened by the court on motion or petition of the trustee, beneficiary or other party having an interest in the estate, for amendment or revision, if it later appears that the account is incorrect, either because of fraud or mistake."
This Court's September 6, 2002, opinion holds that the word "mistake" as used in the last sentence of § 19-3-5 means only mistake of fact,[1] citing American National Fire Insurance Co. v. Hughes, 624 So.2d 1362 (Ala.1993); Higgins v. Douglas, 572 So.2d 1259 (Ala.1990); and Wal-Mart Stores, Inc. v. Green, 740 So.2d 412 (Ala. Civ.App.1999), as authority for the proposition. American National stated that "[i]t is well settled that a release given under a mutual mistake of fact may be avoided." 624 So.2d at 1366. In Higgins, this Court held that where "the substance of Higgins's Rule 60(b)[, Ala. R. Civ.P.,] motion was a request for relief on the ground of a mistake of law" "the trial court did not abuse its discretion in denying Higgins's Rule 60(b) motion." 572 So.2d at 1260. In Wal-Mart, the Court of Civil Appeals simply stated that "a mistake of law is not a ground for relief under Rule 60(b)(1)." 740 So.2d at 413.
None of those cases construes § 19-3-5, Ala.Code 1975. The fact that this Court in American National found that mutual mistake of fact is a ground for voiding an obligation does not, by necessary implication, *788 mean that § 19-3-5 does not permit a partial trust settlement to be reopened because of a mistake of law. Cases construing Rule 60(b), Ala. R. Civ. P., are not particularly persuasive authority for construing § 19-3-5 because Rule 60(b) addresses concerns different from those addressed in the statute.
The Alabama "rule" that a mistake of law is not a ground for relief under Rule 60(b)(1), Ala. R. Civ. P., is a judicial expedient; it is not authority for the proposition that the word "mistake" actually means "mistake of fact" in a statute that describes a rule for the administration of trusts. In City of Birmingham v. City of Fairfield, 396 So.2d 692, 695 (Ala.1981), this Court explained that "[Ala. R. Civ. P.] 60(b)(1) and [Fed.R.Civ.P.] 60(b)(1) are identical, and in the federal system the cases are divided as to whether relief can be had under the rule for an error of the court."[2] This Court then concluded:
"Without discussing the merits of the view that would allow some types of judicial error to fall within [Rule] 60(b)(1), we believe the alternative expressed by Judge Aldrich [that Rule 60(b)(1) does not permit review for a mistake of law] should prevail in Alabama, at least where the movant seeks reconsideration of pure points of law."
396 So.2d at 695-96.
The reason some federal courts of appeal prohibit the review of mistakes of law under Rule 60(b)(1), Fed.R.Civ.P., is that they do not want parties to use Rule 60(b) as a circumvention of the deadline for filing an appeal. See Parke-Chapley Constr. Co. v. Cherrington, 865 F.2d 907, 915 (7th Cir.1989) ("parties should not be allowed to escape the consequences of their failure to file a timely appeal by addressing questions of law to the trial court for reconsideration"); Hess v. Cockrell, 281 F.3d 212, 216 (5th Cir.2002)("`[A] Rule 60(b) appeal may not be used as a substitute for the ordinary process of appeal ... particularly[] where, as here, a mistake of law is alleged to be the primary ground of the appeal.'" (quoting In re Ta Chi Navigation (Panama) Corp., S.A., 728 F.2d 699, 703 (5th Cir.1984))).
Whereas Rule 60(b)(1) provides grounds to reopen a case after a final judgment, § 19-3-5 provides grounds for reopening a partial settlement of a trust before the final settlement. If a partial settlement of a trust cannot be reopened, it becomes in actuality a final settlement of the trust. The plain language of § 19-3-5, Ala.Code 1975, states that matters concerning a trust are settled conclusively only at the final settlement, and the last sentence of § 19-3-5 ensures that partial settlements cannot supplant the role of a final settlement in the proper administration of a trust.
The opinion on original submission reasons that construing the final sentence of § 19-3-5, Ala.Code 1975, to permit partial settlements of trusts to be reopened because of mistakes of law would nullify language in the first sentence of § 19-3-5 mandating that appeals from partial settlements "shall and must be taken" as appeals *789 from ordinary judgments, and that judgments on partial settlements "shall be final and conclusive." 856 So.2d at 784. Yet a rule that permits the reopening of a judgment on a partial settlement for a mistake of law no more "nullifies" the finality of that partial settlement than does one that permits reopening such a partial settlement for a mistake of fact. The statement in the first sentence of § 19-3-5that partial settlements "shall be final and conclusive"means simply that once a trustee has filed a partial settlement of a trust, the trustee need not reopen the settled portion of the trust in order to complete a final settlement of the trust. That is, partial settlements are deemed final unless contested. The phrase in the first sentence of § 19-3-5that appeals from a partial settlement "shall and must be taken"means that one who contests a partial settlement of a trust at the time of the partial settlement must appeal the trial court's judgment on the partial settlement as he or she would any other final judgment by a court. Neither phrase in the first sentence of § 19-3-5 is nullified because the final sentence of § 19-3-5 permits a party to reopen a trust account based on a prior mistake of law before final settlement of a trust.
I would grant rehearing and withdraw the original opinion in this case to remove the language construing § 19-3-5, Ala. Code 1975, to prohibit a party from reopening a partial settlement of a trust for a mistake of law. Therefore, I dissent from overruling the application for a rehearing.
NOTES
[1] The opinion states that Alabama traditionally recognizes only mistakes of fact, and not mistakes of law, as grounds for avoiding "the legal consequences of an act done by the mistaken person." 856 So.2d at 784.
[2] A number of United States Courts of Appeal have held that a party may move for review of a mistake of law under Rule 60(b)(1). See United States v. Reyes, 307 F.3d 451, 455 (6th Cir.2002)("This Court has stated that a Rule 60(b)(1) motion is intended to provide relief... when the judge has made a substantive mistake of law or fact in the final judgment or order."); Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir.1999)("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party ... when the judge has made a substantive mistake of law or fact in the final judgment or order."); Nisson v. Lundy, 975 F.2d 802, 807 (11th Cir.1992)("This broad language [of Rule 60] seems to include mistakes of fact as well as mistakes of law.").