Our supreme court in Goodwyn, Mills, Cawood, Inc. v. MarkelIns. Co, [Ms. 1021820, July 16, 2004] ___ So.2d ___ (Ala. 2004), sets forth the following underlying factual and procedural history in the dispute between Malcolm S. Wadsworth and Dena K. Wadsworth, as the owners of Mountain Movers, L.L.C., Markel Insurance Company, and Goodwyn, Mills Cawood:
 "In October 1997, the Town of Vance solicited bids for a sewer-improvement project. The plans for the project were prepared by [Goodwyn, Mills Cawood]. Bids were taken to determine the general contractor for the project, and Mountain Movers, LLC, was the low bidder. Vance awarded it the general contract. The contract required Mountain Movers to provide a payment bond and a performance bond for Vance. Markel Insurance Company issued those bonds. Under the terms of the bonds, Markel would be held responsible for the performance of the contract and for Mountain Movers' debts if Mountain Movers defaulted on its contract with Vance.
 "During construction of the project, a dispute arose between Mountain Movers and Vance. Mountain Movers claimed that it was entitled to additional compensation and to additional time to complete the project because of alleged deficiencies in the plans prepared by GM C and because of extra work on the project Vance was requiring. The parties were unable to resolve their differences, and, in July 1998, Mountain Movers abandoned the sewer-improvement project. Vance requested that Markel perform its obligations under the payment and performance bonds it had issued, but Markel refused to do so.
 "In January 1999, Mountain Movers sued Markel, GM 
C, and Vance in the Tuscaloosa Circuit Court, asserting numerous claims including negligence, breach of contract, tortious interference with business and contractual relations, and fraud. Markel counterclaimed against Mountain Movers and cross-claimed against GM C and Vance. On November 8, 2000, after extensive discovery *Page 181 
and settlement negotiations, Markel, Vance, and GM 
C entered into a settlement agreement; that agreement resolved all of the outstanding claims among the parties to the agreement. The only claims remaining were Mountain Movers' claims against Markel and Markel's counterclaims against Mountain Movers. The settlement agreement stated in relevant part that `[GM C] agrees to pay to Markel, as surety for Mountain Movers, LLC, the sum of [$275,000], said sum to be paid as settlement in full of all claims, actions, demands, and assertions of liability of any nature whatsoever by Mountain Movers . . . and Markel against [GM C].' Markel also agreed to pay Vance $250,000 in satisfaction of all claims under the performance bond issued by Markel. The agreement declared that all other claims between the parties to the settlement agreement were released and discharged. In a supplemental agreement, the parties agreed to defer their payment obligations under the settlement agreement until Mountain Movers' claims against Markel were resolved.
 "On October 3, 2001, before Mountain Movers' claims against Markel were resolved, and before any payments had been made pursuant to the settlement agreement, GM C's insurer, Reliance Insurance Company of Illinois, Inc., was determined to be insolvent and entered liquidation proceedings in Illinois. On November 6, 2001, although Mountain Movers' claims against Markel remained pending and the payments called for in the settlement agreement presumably were not yet due, Markel paid Vance the $250,000 it had agreed to pay under the settlement agreement. GM C refused to make the $275,000 payment to Markel called for under the settlement agreement, claiming that Reliance Insurance Company, not GM C, was obligated to fund that payment to Markel.
 "On February 12, 2002, Markel moved the trial court to enforce the settlement agreement against GM C. On February 26, 2002, the trial court entered a summary judgment for Markel on all of Mountain Movers' claims against it; on April 9, 2002, the trial court made its February 26, 2002, order final pursuant to Rule 54(b), Ala. R. Civ. P. On April 17, 2002, GM C petitioned the trial court to reform the settlement agreement to reflect the true intent of the parties, arguing that the parties' true intention had been for Reliance Insurance Company to fund the $275,000 payment to Markel and that the agreement did not accurately reflect that intent. On May 6, 2002, the trial court held an evidentiary hearing to consider Markel's motion and GM C's petition. On May 22, 2003, the trial court granted Markel's motion to enforce the settlement agreement and denied GM 
C's petition to reform the settlement agreement. The court also entered a judgment in favor of Markel and against GM C for $275,000 with interest calculated at 12% from November 6, 2001, the date Markel made the payment it was obligated to make to Vance under the settlement agreement."
___ So.2d at ___.
Rather than appeal the entry of the summary judgment entered in favor of Markel Insurance, the Wadsworths began filing a series of motions pursuant to Rule 60(b), Ala. R. Civ. P. In April 2002, the Wadsworths filed their first Rule 60(b) motion, alleging that Markel Insurance and others had perpetrated a fraud upon the court in obtaining the summary judgment entered on February 26, 2002. The trial court denied this motion on April 26, 2002. *Page 182 
On November 18, 2002, the Wadsworths filed their second Rule 60(b) motion, again alleging that a fraud had been perpetrated against the trial court in obtaining the summary judgment entered on February 26, 2002. On February 17, 2004, the Wadsworths filed an "amended" Rule 60(b) motion that is virtually identical to their motion filed on November 18. On April 30, 2004, the trial court entered the following order, in part:
 "[T]he Wadsworths appeared on April 22 [,2004,] and informed the Court that they had a pending `Rule 60' motion filed in November 2002, that had never been ruled upon by the prior trial judge. The Wadsworths contended that while the prior judge had denied relief upon a Rule 60 motion filed in April [2002], the subsequent motion was still pending. After reviewing as much of the voluminous filings as could practically be done, I find hundreds of pages of documents submitted by the Wadsworths including but not limited to a `Motion to Re-Open Court Proceedings, etc.' filed July 21, 2003, and an `Amended Motion for Relief from Judgment' filed February 17, 2004. After considering the matter, I conclude that any pending Rule 60 or other request for relief on any ground by the Wadsworths from Judgments or Orders of the prior trial judge in this case cannot be granted, regardless of how the motions are characterized. Therefore, to the extent that there are pending requests for relief from any Judgment or Order of the former judge (whenever made), the requests and petitions are denied."
The Wadsworths, on June 8, 2004, filed their notice of appeal from the trial court's judgment of April 30, 2004. This case was transferred to this court by the supreme court pursuant to §12-2-7(6), Ala. Code 1975.
Successive Rule 60(b) motions on the same grounds are generally considered motions to reconsider the original ruling and are not authorized by Rule 60(b). Roark v. Bell, 716 So.2d 1245
(Ala.Civ.App. 1998). "[A] trial court does not have jurisdiction to entertain a motion to reconsider the denial of a Rule 60(b), [Ala. R. Civ. P.], motion." Ex parte Jordan, 779 So.2d 183, 184
(Ala. 2000), quoting Ex parte Vaughan, 539 So.2d 1060, 1061
(Ala. 1989).
We conclude that the trial court was without jurisdiction to consider any further motions of the Wadsworths after it denied their initial Rule 60(b) motion on April 26, 2002, and their 42-day time period in which to file an appeal began to run at that time. Rule 4(a)(1), Ala. R.App. P. Therefore, the Wadsworths's notice of appeal filed on June 8, 2004, is clearly untimely and this appeal is due to be dismissed.
APPEAL DISMISSED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.