MOORE, Judge.
 

 E.S.R., Jr. (“the father”), appeals from an order dated May 30, 2007, denying his motion for relief from a series of judgments entered by the Madison Juvenile Court. We affirm.
 

 Jurisdiction
 

 Although neither party has raised the issue of jurisdiction before this court, “ ‘jurisdictional issues are of such significance that a court may take notice of them
 
 ex mero motu. Eubanks v. McCollum,
 
 828 So.2d 935, 937 (Ala.Civ.App.2002).’ ”
 
 D.V.P. v. T.W.P.,
 
 905 So.2d 853, 855 (Ala.Civ.App.2005) (quoting
 
 Heaston v. Nabors,
 
 889 So.2d 588, 590 (Ala.Civ.App.2004)).
 

 This appeal arises from juvenile proceedings; therefore, the Rules of Juvenile Procedure govern this action. Rule 1(A), Ala. R. Juv. P. Rule 1(B), Ala. R. Juv. P., provides:
 

 
 *230
 
 “All postjudgment motions, whether provided for by the Alabama Rules of Civil Procedure or the Alabama Rules of Criminal Procedure, must be filed within 14 days after the entry of judgment and shall not remain pending for more than 14 days.”
 

 In this case, the juvenile court entered a series of judgments between October 5, 2003, and August 25, 2006, in a dependency proceeding. The father filed a notice of appeal on August 29, 2006. On February 19, 2007, while his appeal was pending,
 
 [1]
 
 the father filed a motion with this court for leave to file a Rule 60(b), Ala. R. Civ. P., motion with the juvenile court. This court granted the motion on February 28, 2007. The father’s court-appointed counsel filed a document entitled “Motion for Relief from Judgment” on March 6, 2007. The juvenile court set that motion for a hearing on May 18, 2007. However, on May 7, 2007, the father filed his own “Motion for Relief from Judgment,” along with a motion to strike the March 6, 2007, “Motion for Relief from Judgment.” The juvenile court held a hearing on the father’s motions on May 18, 2007, and entered an order denying the motions on May 30, 2007.
 

 The father’s postjudgment motions are deemed to have been filed on February 19, 2007.
 
 See
 
 Rule 60(b) (“If leave of the appellate court is obtained, the motion shall be deemed to have been made in the trial court as of the date upon which leave to make the motion was sought in the appellate court.”). In the first motion, the father sought to have two judgments, one entered on December 15, 2005, and one entered on August 25, 2006, set aside on the grounds of mistake and excusable neglect as set out in Rule 60(b)(1), newly discovered evidence as set out in Rule 60(b)(2), misconduct of an adverse party as set out in Rule 60(b)(3), and ineffective assistance of counsel under Rule 60(b)(6). In the second motion, the father sought to have five judgments set aside on the ground that the judgments were void as set out in Rule 60(b)(4), that they had been procured by fraud upon the court, and that he had received ineffective assistance of counsel under Rule 60(b)(6).
 
 [2]
 
 If the Rule
 
 *231
 
 60(b) motions are considered “post-judgment” motions, pursuant to the strict terms of Rule 1(B), the juvenile court could not entertain them because they were not filed with 14 days of the entry of any of the judgments being challenged.
 

 However, in
 
 Ex parte R.S.C.,
 
 853 So.2d 228, 233-34 (Ala.Civ.App.2002), this court held that Rule 60(b) motions do not fall within Rule 1(B) because they form “a collateral attack on the judgment” that “does not affect the finality of the judgment or suspend its operation.” Based on
 
 R.S.C.,
 
 the failure of the father to file his Rule 60(b) motions within 14 days of the entry of the challenged judgments does not automatically divest the juvenile court of jurisdiction.
 

 Although the time limitations established in Rule 1(B) do not apply, the father still had to comply -with the time limitations set out in Rule 60(b). Rule 60(b) states that motions for relief from a judgment based on reasons set out in subdivisions (1), (2), and (3) “shall be made within a reasonable time and ... not more than four (4) months after the judgment, order, or proceeding was entered or taken.”
 
 See Bryant v. First Tuskegee Bank,
 
 866 So.2d 1139, 1142 n. 1 (Ala.Civ.App.2002), overruled on other grounds,
 
 Ex parte Full Circle Distrib., L.L.C.,
 
 883 So.2d 638 (Ala.2003). Hence, the juvenile court did not have jurisdiction to consider the father’s motions asserting grounds under Rule 60(b)(1), (2), and (3) that were filed well beyond four months after the entry of the final August 25, 2006, judgment.
 

 In
 
 Ex parte E.D., 111
 
 So.2d 113 (Ala.2000), our supreme court held in a termination-of-parental-rights case that “under certain circumstances,” when a parent cannot reasonably file a claim of ineffective assistance of counsel within the period established for the filing of motions for a new trial, a parent may file a Rule 60(b)(6) motion - based on ineffective assistance of counsel within a reasonable time following the judgment.
 
 [3]
 

 Ill
 
 So.2d at 116. The court also noted that'“Rule 60(b) allows a trial court to entertain an independent action ‘within a reasonable time and not to exceed three (3) years after the entry of the judgment,’ ”
 
 id.,
 
 to, among other things, “set aside a judgment for fraud upon the court.” Rule 60(b).
 
 [4]
 
 Our supreme court also ruled in
 
 Ex parte Full Circle Distribution, L.L.C., supra,
 
 that a motion for relief from a void judgment filed pursuant to Rule 60(b)(4) may be
 
 *232
 
 made at any time after rendition of the judgment. Taking these cases together, it appears that the juvenile court did have jurisdiction to consider the father’s motions to set aside the judgments as void under Rule 60(b)(4), to set aside the judgments based on ineffective assistance of counsel under Rule 60(b)(6), and to set aside the judgments due to fraud upon the court under Rule 60(b). Therefore, on this appeal, we review the judgment on the father’s Rule 60(b) motions only to determine if the juvenile court erred in failing to grant the father’s motions on those grounds.
 

 Rule 60(b) (Ip) Claims
 

 The father argues that the juvenile court erred in failing to declare five judgments void. The father argues that the first judgment, entered on October 8, 2003, is void because of lack of personal jurisdiction and that the judgments entered on April 6, 2004, October 31, 2005, May 2, 2006, and August 25, 2006, are void because they were procured in a manner inconsistent with due process.
 

 When considering an appeal from the denial of a Rule 60(b)(4) motion,
 

 “ ‘[t]he standard of review ... is not whether there has been an abuse of discretion.... If the judgment is valid, it must stand; if it is void, it must be set aside. A judgment is void only if the court rendering it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process.’ ”
 

 Systrends, Inc. v. Group 8760, LLC,
 
 959 So.2d 1052, 1062 (Ala.2006) (quoting
 
 Insurance Mgmt. & Admin., Inc. v. Palomar Ins. Corp.,
 
 590 So.2d 209, 212 (Ala.1991)). The father, as the party asserting lack of personal jurisdiction and lack of due process, had the burden of proving those grounds.
 
 See Seymore v. Taylor,
 
 716 So.2d 1216 (Ala.Civ.App.1997).
 

 On October 8, 2003, the juvenile court adopted the order of a referee, finding E.S.R III (“the child”) and two of his half siblings dependent and awarding shelter-care custody to the Madison County Department of Human Resources (“DHR”). The father argues that the October 8, 2003, judgment is-void because, he says, he was not provided service of summons and was not notified of his right to counsel before the September 5, 2003, hearing upon which the October 8, 2003, judgment was based.
 

 When a child is not released from shelter care as provided in Ala.Code 1975, § 12-15-58, the law requires a petition to be filed within 72 hours to determine whether continued shelter care is required. Ala.Code 1975, § 12-15-60(a). Pursuant to Ala.Code 1975, § 12-15-60(b):
 

 “Notice of the detention or shelter care or other care hearing, either oral or written, stating the time, place and purpose of the hearing and the right to counsel shall be given to the parent, guardian or custodian if they can be found ....”
 

 Although Rule 13, Ala. R. Juv. P., provides that “[sjervice of summons shall be pursuant to the Alabama Rules of Civil Procedure” and that summons “shall be served at least 24 hours before the hearing on the merits,” that rule only applies when service of summons is required by law. Section 12-15-60, Ala.Code 1975, plainly does not require service of summons, but only oral or written notice. Thus, the mere fact that the record does not contain a return of service of summons is not dispositive.
 

 According to the judgment, the court determined that “notice of the Shelter Care hearing stating time, place and purpose of the hearing and the right to counsel has been given to the natural parents.” The record does not contain a tran
 
 *233
 
 script of the September 5, 2003, hearing. In the absence of a transcript, this court presumes that the juvenile court had before it sufficient evidence to sustain its findings.
 
 See Differ v. State,
 
 962 So.2d 876, 877 (Ala.Civ.App.2007). Based on this presumption, we must conclude that the juvenile court received some information that the father had received proper notice of the hearing and his right to counsel. Although the father alleges that he did not learn of the dependency proceedings until October 24, 2008, the father did not file any affidavit or deposition testimony in support of that contention. The father instead requested the juvenile court to accept his unsworn statements as evidence because he was acting as his own counsel. The father did not cite to the juvenile court or to this court any legal authority to the effect that representations of a
 
 pro se
 
 litigant may be treated as sworn testimony.
 
 See D.M. v. Walker County Dep’t of Human Res.,
 
 919 So.2d 1197, 1207 n. 6 (Ala.Civ.App.2005) (“‘[W]e cannot create legal arguments for a party based on un-delineated general propositions unsupported by authority or argument.’” (quoting
 
 Spradlin v. Spradlin,
 
 601 So.2d 76, 79 (Ala.1992))).
 

 In the absence of any
 
 evidence
 
 indicating that the father did not receive proper notice of the shelter-care hearing, the juvenile court did not err in failing to find that it lacked personal jurisdiction over the father at the time it entered the October 8, 2003, judgment.
 
 [5]
 

 The father next argues that the juvenile court deprived him of his due-process rights as the presumed father of the child. When it filed its shelter-care petition on September 5, 2003, DHR referred to the father as the “putative father” of the child. On October 31, 2003, the juvenile court ordered paternity testing.
 
 [6]
 
 The results of DNA testing revealed a 99.99% probability that the father was the biological father of the child; those results were filed with the juvenile court on December 1, 2003. However, the juvenile. court did not adjudicate the father to be the biological father of the child until February 6, 2006. The father claims that in the interim the juvenile court failed to recognize that he was presumed to be the natural father of the child by virtue of his taking the child into his home and openly holding out the child as his natural child.
 
 See
 
 Ala.Code 1975, § 26-17-5(a)(4).
 

 In
 
 Neal v. Neal,
 
 856 So.2d 766 (Ala.2002), our supreme court explained that a judgment is void if it is entered in a manner inconsistent with due process of law.
 
 *234
 
 856 So.2d at 781 (quoting
 
 Seventh Wonder v. Southbound Records, Inc.,
 
 364 So.2d 1173, 1174 (Ala.1978)). In that context, “
 
 ‘due process of law
 
 means notice, a hearing according to that notice, and a judgment entered in accordance with such notice and hearing.’ ” 856 So.2d at 782 (quoting
 
 Frahn v. Greyling Realization Corp.,
 
 239 Ala. 580, 583, 195 So. 758, 761 (1940)). Relying on
 
 Neal,
 
 the supreme court, in
 
 Ex parte Third Generation, Inc.,
 
 855 So.2d 489 (Ala.2003), held that a judgment is void only if it is entered without procedural due process.
 

 The father fails to show how his procedural-due-process rights have been violated. Throughout the dependency proceedings, the juvenile court afforded the father notice and an opportunity to be heard, as well as the right to counsel at the state’s expense. From the outset of the case, the juvenile court provided the father the same procedural rights as any legal father. The father has not cited any action taken by DHR or any ruling made by the juvenile court that deprived him of procedural-due-process rights on the basis that he was merely the putative father of the child.
 

 The father next asserts that he was denied the right to discovery, the right to cross-examine witnesses for the state, and the right to subpoena witnesses and to present their testimony. In
 
 J.D. v. Tuscaloosa County Department of Human Resources,
 
 923 So.2d 303, 311 (Ala.Civ.App.2005), this court implied that the guarantee of procedural due process entitles a parent in a deprivation case with the right to discovery, to cross-examine witnesses, and subpoena power. Thus, we assume, without deciding, that a judgment in a dependency proceeding would be void if a juvenile court denied a parent these basic procedural rights. However, we conclude that the father has not proven his allegations.
 

 The record discloses that the juvenile court denied only two of the father’s discovery requests:
 
 [7]
 
 (1) a motion to compel the mother to submit to a mental evaluation, and (2) a motion for the production of a videotaped interview of C.T., a half sibling of the child. The juvenile court denied the motions after DHR raised valid objections to each discovery request.
 
 [8]
 
 “It is well settled that discovery matters are within the discretion of the trial court.”
 
 Home Ins. Co. v. Rice, 585
 
 So.2d 859, 862 (Ala.1991) (citing
 
 Ex Parte Fielder,
 
 528 So.2d 325 (Ala.1988)). A juvenile court’s judgment may be reversed for the court’s failure to order discovery if that failure constitutes an abuse of discretion.
 
 Id.
 
 In this case, we find that the juvenile court followed proper procedure and did not exceed its discretion in denying the father’s
 
 *235
 
 discovery requests. However, even if the juvenile court had exceeded its discretion by erroneously failing to grant a discovery request, such error does not amount to the kind of deprivation of due process that would render any subsequent judgment void.
 
 See Ex parte R.S.C.,
 
 853 So.2d at 235 (“It is important to note that a judgment is not void simply because it is erroneous, because Rule 60(b) is not intended as a substitute for appeal.”).
 

 The father has utterly failed to prove that the juvenile court denied him the right to cross-examine adverse witnesses. After a thorough review of the record, we have found no instance in which the juvenile court ruled that the father could not cross-examine witnesses for DHR, the mother, or the children. The father has not cited to any portion of the record to support this claim.
 
 See
 
 Rule 28(a)(7), Ala.R.App. P. (requiring appellant to make “appropriate references to the record” in its statement of facts). The father filed his appellate brief pro se; “however, a pro se litigant must comply with legal procedures and court rules.
 
 Black v. Allen,
 
 587 So.2d 349 (Ala.Civ.App.1991).”
 
 Schwartz v. Schwartz,
 
 835 So.2d 1017, 1018 (Ala.Civ.App.2002).
 

 The father has likewise not cited any ruling of the juvenile court denying him the right to subpoena witnesses or to call and examine his own witnesses.
 
 [9]
 
 The juvenile court did deny the father’s motion requesting the court obtain the address of Y.M. (“the mother”) so that the father could serve a subpoena on R.M.,
 
 [10]
 
 the mother’s eldest son who the father suspected was living with the mother. The mother objected to the motion on the ground that R.M. did not reside with her and that the father was using the motion as a subterfuge to circumvent a protection-from-abuse order preventing him from obtaining her address. Rule 45, Ala. R. Civ. P., which governs the issuance of trial subpoenas,
 
 [11]
 
 does not require a lower court to obtain the address of the person to be subpoenaed on behalf of a party. Moreover, based on the facts of this case, the juvenile court had good reason not to reveal the mother’s address to the father based on the existing protection-from-abuse order. Even if the juvenile court had erred in denying the motion, such error is not the type of error that will render a judgment void under
 
 Neal, supra.
 
 A judgment is not void simply because of some erroneous ruling made by the lower court that may be reviewed on appeal.
 
 See Bryant v. Tuskegee Bank,
 
 866 So.2d 1139 (Ala.Civ.App.2002), overruled on other grounds,
 
 Ex parte Full Circle Distribution, L.L.C., supra.
 

 For the foregoing reasons, we conclude that the father did not prove that any of the judgments entered by the juvenile court should have been set aside as void judgments. Therefore, we find that the juvenile court did not err in failing to grant the father’s Rule 60(b)(4) motion.
 

 
 *236
 

 Rule 60(b) Fraud Claims
 

 As held by our supreme court, relief from a judgment may be granted “ ‘either by motion or in an independent action, in any situation in which it could have been had by one of the ancient remedies.’ ”
 
 Ex parte Waldrop,
 
 395 So.2d 62, 63 (Ala.1981) (quoting Wright & Miller,
 
 Federal Practice and Procedure: Civil
 
 § 2687 (1973)). Accordingly, the juvenile court could consider the father’s Rule 60(b) motion seeking to set aside its judgments based on fraud upon the court.
 

 In his Rule 60(b) motion, the father charged the mother, DHR, and the guardian ad litem with committing multiple acts of fraud upon the court. However, merely because the father has characterized certain conduct as “fraud upon the court” does not make it so.
 
 See Greathouse v. Alfa Fin. Corp.,
 
 732 So.2d 1013, 1016 (Ala.Civ.App.1999). In
 
 Hall v. Hall,
 
 587 So.2d 1198 (Ala.1991), the supreme court stated:
 

 “ ‘Fraud on the court’ has been defined as ‘fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.’ 7 J. Moore,
 
 Moore’s Federal Practice
 
 § 60.33 (2nd ed.1990). Such fraud must be ‘extrinsic,’ that is, perpetrated to obtain the judgment, rather than ‘intrinsic.’
 
 Brown v. Kingsberry Mortgage Co.,
 
 349 So.2d 564 (Ala.1977). In discussing ‘fraud on the court,’ the Eleventh Circuit Court of Appeals stated:
 

 “ ‘Perjury is an intrinsic fraud which will not support relief from judgment through an independent action.
 
 See United States v. Throckmorton,
 
 8 Otto 61, 98 U.S. 61, 25 L.Ed. 93 (1878);
 
 see also Great Coastal Express [v. International Brotherhood of Teamsters, Chauffeurs,
 
 Ware
 
 housemen & Helpers of America],
 
 675 F.2d [1349] at 1358 (4th Cir.1982);
 
 Wood v. McEwen,
 
 644 F.2d 797 (9th Cir.1981). Under the
 
 Throckmorton
 
 doctrine, for fraud to lay a foundation for an independent action, it must be such that it was not in issue in the former action nor could it have been put in issue by the reasonable diligence of the opposing party.
 
 See Toledo Scale Co. v. Computing Scale Co.,
 
 261 U.S. 399, 425, 43 S.Ct. 458, 465, 67 L.Ed. 719 (1923). Perjury by a party does not meet this standard because the opposing party is not prevented from fully presenting his case and raising the issue of perjury in the original action.
 

 “ ‘ “Perjury and fabricated evidence are evils that can and should be exposed at trial, and the legal system encourages and expects litigants to root them out as early as possible.... Fraud on the court is therefore limited to the more egregious forms of subversion of the legal process, ... those we cannot necessarily expect to be exposed by the normal adversary process.”
 

 “
 
 ‘Great Coastal Express,
 
 675 F.2d at 1357.’
 

 “Travelers Indemnity Co. v. Gore,
 
 761 F.2d 1549, 1552 (11th Cir.1985).”
 

 587 So.2d at 1200-01.
 

 The vast majority of the father’s claims can only be categorized as accusations of intrinsic fraud. The father basically asserts that the mother initially lied to DHR and the juvenile court about the circumstances leading to the summary removal of the children from the home and that later, during her rehabilitation period, the mother misrepresented her living ar
 
 *237
 
 rangements,
 
 [12]
 
 her history of domestic violence, and her employment status.
 
 [13]
 
 The father claims that DHR misrepresented the nature of his crimes as well as the criminal proceedings against the child’s paternal grandmother and her mental condition. The father contends that the guardian ad litem concealed an incident in 2005 in which the mother left the children outside her home while she slept on the sofa. We need not decide whether the father offered any actual evidence to support these accusations because, even if he had, he would have succeeded only in proving intrinsic fraud, which will not support a Rule 60(b) motion to set aside a judgment. The father was given an opportunity during the dependency proceedings to convince the juvenile court of the falsity of these alleged misrepresentations. Therefore, relief under Rule 60(b) is not the proper remedy.
 

 The father claims that DHR sabotaged the home study of the child’s paternal grandparents. The father contends that the South Carolina Division of Social Services (“DSS”) originally approved the home of the paternal grandparents for placement of the child on March 11, 2004.
 
 [14]
 
 The father maintains that after it received the favorable March 11 report, DHR instructed DSS to delay filing the report until after an upcoming March 29, 2004, hearing, that DHR then improperly sent DSS a copy of the pornographic videotape DHR alleged the father had made, and that, as a result, on March 16, 2004, DSS issued an unfavorable home study.
 
 [15]
 
 At the hearing on the Rule 60(b) motion, DHR’s attorney denied that DHR had ever had a copy of the videotape or that it had sent the videotape to DSS. The father offered no evidence to refute that statement. The March 16 report does not mention the videotape; it bases DSS’s recommendation on the paternal grandmother’s failure to submit to requested psychological testing and the lack of sufficient income of the paternal grandparents. The evidence does not bear out the father’s contentions.
 

 The father also claims that DHR committed fraud upon the court by allowing the mother to maintain telephone contact ■with C.T. after the mother’s visitation rights were suspended in August 2005. The father contends that the mother used her telephone privileges to collaborate with C.T. on a story that would explain away an alleged incident of lack of supervision so as to defeat DHR’s and the court-appointed judicial advocate’s investigation into the incident. The father also maintains that DHR switched C.T. to a counsel- or DHR controlled in order to influence C.T.’s statements in favor of DHR’s permanency plan. Even assuming such acts could be categorized as extrinsic fraud, which is doubtful, the juvenile court did not err in failing to set aside the judgment
 
 *238
 
 based on these arguments, which are wholly based on the father’s speculations and not on any evidence.
 

 Lastly, the father claims that DHR’s attorney threatened his attorney and the guardian ad litem with the loss of future appointments if they did not agree with DHR’s plan to return the child to the mother and that, as a result, the guardian ad litem colluded with DHR’s attorney to achieve DHR’s desired permanency goal for the children. The father did not support this allegation with an affidavit or other competent evidence. DHR’s attorney and the guardian ad litem flatly denied that any threat had been made. Moreover, DHR’s attorney pointed out that he has no control over court appointments in dependency proceedings. The record contains absolutely no evidence to support the father’s accusation.
 

 Accordingly, the juvenile court did not err in failing to grant the father relief based on his Rule 60(b) motion.
 

 Rule 60(b)(6) Claims
 

 The father next argues that all the judgments should be set aside because, he says, he was denied effective assistance of counsel. The father complains in his first motion for relief from judgment that his attorney did not subpoena any witnesses on his behalf, did not question DHR’s caseworkers, did hot create a record to support an appeal, did not cross-examine the mother or the guardian ad litem, and did not offer the paternal grandparents as a placement option for the child. In his second motion for relief from judgment, the father further asserts that his attorney did not present any evidence on his behalf, failed to reveal a conflict of interest arising after the alleged threat made by DHR’s attorney to withhold future appointments from him if he did not agree to DHR’s permanency plan, misrepresented his ability to compel the juvenile court to hold a hearing and accept the father’s evidence, misstated that he could appeal all the judgments at the end of the proceedings, and failed to move to hold witnesses in contempt for failing to respond to subpoenas.
 

 As for the failure of the attorney to reveal the alleged threats made by DHR’s attorney and to notify the father of his resulting conflict of interest, we have already concluded that the father did not present any evidence to prove the threats ever occurred. Consequently, the record does not support the father’s assertion that his attorney ever had a conflict of interest that he would have been required to disclose.
 

 As to the father’s other points, we note that, to prevail on a claim of ineffective assistance of counsel, a party must show (1) that his or her counsel’s performance was deficient and (2) that he or she was prejudiced as a result of the deficient performance.
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In
 
 Woods v. State,
 
 957 So.2d 492 (Ala.Crim.App.2004), the court said:
 

 “ ‘In determining whether a defendant has established his burden of showing that his counsel was ineffective, we are not required to address both considerations of the
 
 Strickland v. Washington
 
 test if the defendant makes an insufficient showing on one of the prongs.
 
 Id.
 
 at 697, 104 S.Ct. at 2069. In fact, the Court explained that “[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.”
 
 Id.’
 
 ”
 

 957 So.2d at 503 (quoting
 
 Thomas v. State,
 
 511 So.2d 248, 255 (Ala.Crim.App.1987)). A parent asserting ineffective assistance of counsel bears a heavy burden of proving that there is a reasonable probability that
 
 *239
 
 the outcome of his or her case would have been different but for counsel’s performance.
 
 Brooks v. State,
 
 695 So.2d 176, 182 (Ala.Crim.App.1996),
 
 aff'd,
 
 695 So.2d 184 (Ala.1997). “ ‘The decision to grant or to withhold Rule 60(b)(6) relief being discretionary, the trial court’s decision will not be reversed except for an abuse of that discretion.
 
 Textron v. Whitfield,
 
 380 So.2d 259 (Ala.1979).’ ”
 
 Ex parte Citizens Bank,
 
 879 So.2d 535, 537 (Ala.2003) (quoting
 
 Smith v. Clark,
 
 468 So.2d 138, 140 (Ala.1985)).
 

 The father argues that, but for the omissions of his attorney, the child probably would have been placed into the care of the paternal grandparents early in the case, avoiding a prolonged stay in foster care, and that the paternal grandparents, not the mother, probably would have obtained permanent legal custody of the child.
 

 The record reveals that the child and his half siblings were placed into foster care originally as an emergency measure after the mother entered a domestic-violence shelter and the father was incarcerated. DHR quickly developed a plan to reunite the child and his half siblings with the mother with a concurrent plan of placing the child and his half siblings with a suitable relative. The evidence shows that DHR considered placing the child with the paternal grandparents early in the dependency proceedings. However, DSS initially identified two major obstacles to placement with the paternal grandparents — the paternal grandmother’s refusal to submit to the psychological testing required by DHR and the lack of sufficient income. The record reveals the paternal grandmother did not submit an acceptable psychological-evaluation report until at least late January 2005, if at all.
 
 [16]
 
 The father has failed to explain how his attorney could have convinced the juvenile court to place the child with the paternal grandparents in 2004, given the circumstances.
 

 By March 2005, another concern arose when the paternal grandmother was arrested for making threats against a public official and for committing aggravated domestic violence. Although the father’s attorney could have proven that one of the criminal charges had been nol prossed, his failure to do so did not cause the juvenile court to keep the child in foster care instead of placing the child with the paternal grandparents. At that time, the juvenile court still had sufficient undisputed evidence before it to indicate that the paternal grandparents could not meet the needs of the child and, hence, were not qualified to receive and care for the child as required by law.
 
 See
 
 Ala.Code 1975, § 12-15-71(a)(3)c. By the time the child had been returned to the physical custody of the mother on December 16, 2005, the paternal grandparents had not provided evidence of sufficient income to care for the child. No matter how diligent, the father’s attorney could not have overcome the facts that rendered the paternal grandparents unable to receive and care for the child.
 

 The record also reveals that the juvenile court received a great deal of evidence regarding the mother’s deficiencies, including her initial failure to accept any responsibility for the dependency of the child and his half siblings, her initial reluctance to cooperate with reunification efforts, her psychological problems, her lack of adequate parenting skills, her long-term domestic-violence history, her prolonged housing and income problems, her history
 
 *240
 
 of drug use, her propensity to associate with violent and criminally active men, and her problems raising R.M. The juvenile court also received evidence of the concerns raised by the mother’s living arrangements with R.B. and R.M. Other than having his attorney pursue the unfounded allegations that the mother was an accomplice to the pornographic videotaping of C.T., the father has not detailed precisely what additional evidence his counsel could have or should have presented to the juvenile court to prove the mother’s unfitness to parent the child.
 

 The father also fails to cite any evidence that the attorney could have or should have presented to convince the juvenile court that the mother had not successfully rehabilitated. The record shows that DHR and the guardian ad litem consistently investigated and questioned the completeness of the mother’s progress and that they presented their concerns to the juvenile court. The record further shows that the juvenile court cautiously proceeded with reunification by first allowing the mother supervised visitation, then unsupervised visitation once a week, then physical custody with DHR protective supervision, then a slow transition to legal custody accompanied by over a dozen conditions, and then finally unrestricted legal and physical custody. By August 2006, the mother had stabilized, was living in a suitable home, had been maintaining a steady and adequate income, had successfully completed all the counseling and psychological evaluations required by the juvenile court, had passed all of her parenting classes, had not tested positive for illegal drugs in two years, had committed to avoiding harmful relationships, and was safely and properly raising the child and his half siblings without state assistance. The juvenile court did not close its file until it was convinced not only that the mother could safely care for the children without state intervention, but that, in fact, she had been doing so for a significant period. In the face of the evidence of the mother’s rehabilitation, it is difficult to see how the father’s attorney could have convinced the juvenile court to deny the mother custody of the child.
 

 Furthermore, in all probability, the judgments of the juvenile court would not have been reversed by this court had the father instituted appeals within 14 days of the entry of each judgment.
 
 See
 
 Rule 1(B), Ala. R. Juv. P. A thorough review of the record does not disclose any reversible error committed by the juvenile court in conducting the various hearings, in ruling on discovery and other motions, in making its findings of dependency, or in rendering its various orders for the disposition of the child. We cannot conclude that this court would have reversed the juvenile court for failing to place the child with the paternal grandparents at any point in the dependency proceedings or for granting physical and legal custody to the mother.
 

 Because the father has failed to carry his heavy burden of proving he has been prejudiced by the alleged ineffective assistance of his counsel, we conclude that the juvenile court did not exceed its discretion in denying the father’s Rule 60(b)(6) motion on that ground.
 

 Postjudgment Proceedings
 

 The father next argues that the juvenile court committed multiple errors during the proceedings leading up to the denial of his Rule 60(b) motions and that his counsel ineffectively presented and argued his Rule 60(b) motions. We find no basis for reversing the judgment of the juvenile court based on these arguments.
 

 The father argues that the juvenile court erred in denying him the right to represent himself at the hearing on his
 
 *241
 
 Rule 60(b) motions. Under § 10 of the Alabama Constitution of 1901, “no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party,” and state laws governing the practice of law are not to “be construed to prevent any person from conducting or managing his own case in any court in this state.” Ala.Code 1975, § 34-3-19. We need not decide whether the Constitution and § 34-3-19 grant an incarcerated parent the right to represent himself or herself on a Rule 60(b) motion because we find that the father waived any such right.
 

 In analogous criminal cases, the courts have held that the right to self-representation must be asserted “ ‘at some time “before meaningful trial proceedings have commenced” and that thereafter its exercise rests within the sound discretion of the trial court.’ ”
 
 See Upshaw v. State,
 
 992 So.2d 57, 61 n. 3 (Ala.Crim.App.2007) (quoting
 
 United States v. Lawrence,
 
 605 F.2d 1321, 1325 (4th Cir.1979)). Other cases emphasize that a criminal defendant may not wait to assert a right to self-representation until the point when it would disrupt the proceedings.
 
 See Mallory v. State,
 
 225 Ga.App. 418, 422, 483 S.E.2d 907, 911 (1997). In this case, the father did not assert his right to self-representation until April 6, 2007, over three years after the dependency case had been initiated. The father also asserted his right after all trial proceedings had ended. After claiming the right to proceed pro se, he twice filed motions to continue the May 18, 2007, hearing date on his Rule 60(b) motions on the ground that he and/or his witnesses could not be prepared in time. Based on the circumstances, we find that the juvenile court did not err in denying the father’s motion to represent himself.
 

 The father next maintains that the juvenile court erred in failing to grant him leave to take his own deposition for presentation at the May 18, 2007, hearing. The father cites the general rule that an incarcerated person has no right to be transported to a dependency proceeding but does have the right to present his or her testimony via deposition.
 
 See Pignolet v. State,
 
 489 So.2d 588 (Ala.Civ.App.1986);
 
 Whitehead v. Bi-Petro Marketing, Inc.,
 
 356 So.2d 150 (Ala.1978). However, the father has not cited any cases that require a trial court to grant leave to an incarcerated person to take his or her own deposition for the purposes of presentation at a Rule 60(b) hearing. In analogous cases, under Rule 32.9, Ala. R.Crim. P., a judge presiding over a hearing to set aside a conviction on the ground of ineffective assistance of counsel has the discretion to take evidence by affidavits, written interrogatories, or depositions, in lieu of an evidentiary hearing, in which case the presence of the petitioner is not required. The father has not indicated how the failure to grant him leave to take his deposition prejudiced his ability to preserve and present his testimony via affidavit. Hence, we conclude that the juvenile court did not commit reversible error on this ground.
 

 The father next asserts that the juvenile court erred in not granting his discovery requests. However, the father has not cited any rule, statute, or caselaw requiring a juvenile court to renew discovery after trial proceedings have ended to allow a party to gather evidence to support a Rule 60(b) motion. It is not the function of this court to perform the appellant’s legal research.
 
 See K.W. v. State Dep’t of Human Res.,
 
 614 So.2d 452 (Ala.Civ.App.1992). Moreover, we review a trial court’s orders relating to discovery solely to determine whether the trial court exceeded
 
 *242
 
 its discretion.
 
 See Ex parte Fielder By and Through Neener,
 
 528 So.2d 325, 326 (Ala.1988). It appears that the father was attempting to obtain discovery to prove the various alleged misrepresentations that we have already held would constitute intrinsic fraud if proven. Hence, as the juvenile court concluded, the requested discovery was irrelevant as that term is understood under Rule 26, Ala. R. Civ. P. The juvenile court did not exceed its discretion in failing to grant the father’s discovery motions.
 

 The father further maintains that the juvenile court erred in failing to take “mandatory” judicial notice of certain facts asserted in the father’s various motions and certain facts contained in the exhibits attached to the motions. The father claims that Rule 201(d), Ala. R. Evid., requires a court to “take judicial notice if requested by a party and supplied with the necessary information.” However, the father overlooks Rule 201(b), Ala. R. Evid., which states:
 

 “A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.”
 

 Pursuant to this standard, a court may take judicial notice of its own prior proceedings insofar as they are relevant to the question of law presented,
 
 see Slepian v. Slepian,
 
 355 So.2d 714, 716 (Ala.Civ.App.1977), but there is no authority cited allowing a court to take judicial notice of extraneous facts that could have been presented in these proceedings. Moreover, assuming the juvenile court ignored those facts that it could have judicially noticed, the father has failed to explain how this action resulted in an erroneous denial of his Rule 60(b) motion. This court has examined the record in the prior appeal and in this appeal and has found no factual basis to support the father’s Rule 60(b) motion. We cannot conclude that, had the juvenile court performed a similar review, it would have decided any differently.
 

 The father next asserts that the juvenile court erred in failing to grant his motion for a summary judgment. On May 9, 2007, the father filed a motion for a summary judgment, asserting that he was entitled to Rule 60(b) relief as a matter of law. Except for motions brought pursuant to Rule 60(b)(4), as discussed above, whether a movant has established grounds for relief under Rule 60(b) is a matter within the sound discretion of the trial court.
 
 Ex parte Wal-Mart Stores, Inc.,
 
 725 So.2d 279 (Ala.1998). The father has not cited to the court any rule or precedent establishing that a Rule 60(b) motion must be granted as a matter of law, as is the case for motions filed under Rule 56, Ala. R. Civ. P. Even if a party could obtain a summary judgment determining that he or she is entitled to Rule 60(b) relief, the father failed to comply with Rule 56 by properly supporting his motion with admissible evidence,
 
 see
 
 Rule 56(c)(1) and (e), Ala. R. Civ. P., and proving a
 
 prima facie
 
 case establishing one or more of the grounds for relief under Rule 60(b).
 
 See, generally, Richardson v. Kroger Co.,
 
 521 So.2d 934 (Ala.1988). Hence, the fact that DHR did not respond to his motion for a summary judgment did not mandate that the juvenile court enter Rule 60(b) relief for the father by default, as he contends.
 
 See
 
 Rule 56(e), Ala. R. Civ. P. (“If the adverse party does not so respond, summary judgment,
 
 if appropriate,
 
 shall be entered against him.” (emphasis added));
 
 see also Miles v. Foust,
 
 889 So.2d 591, 595 (Ala.Civ.App.2004).
 

 The father also argues that the denial of his Rule 60(b) motions should be set aside based on ineffective assistance of counsel
 
 *243
 
 at the May 18, 2007, hearing. The record reveals that the father’s court-appointed postjudgment counsel argued the Rule 60(b) motions before the juvenile court at the hearing. As pointed out in the father’s brief to this court, his counsel made several misstatements regarding the gravamen of his Rule 60(b) motions, which she never fully corrected during the hearing. However, the father has utterly failed to show how these mistakes were “the chief cause of his motion for relief from judgment being denied,” as he asserts in his brief. As set out above, to successfully assert ineffective assistance of counsel, the movant must show that he or she was prejudiced as a result of the deficient performance.
 
 Strickland, supra.
 
 As our thorough discussion of the substance of the father’s Rule 60(b) motions proves, grounds did not exist to justify the relief requested. No matter how well the father’s position was argued and presented, the fact remains that his Rule 60(b) motions were meritless. Hence, the judgment of the juvenile court denying the Rule 60(b) motions is not due to be reversed on this ground.
 

 Previous Appellate Issues
 

 The father last argues that this court erred in his previous appeal by accepting an incomplete record and that this court’s judgment was therefore void. We will not consider those issues on the appeal of the denial of the father’s Rule 60(b) motions by the juvenile court.
 
 See
 
 Rule 3(c), Ala. R.App. P.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
 

 THOMAS, J., concurs in the result, without writing.
 

 [1]
 

 . This court ultimately affirmed the judgments of the juvenile court, without a written opinion.
 
 See E.S.R., Jr. v. Madison County Dep’t of Human Res.
 
 (No. 2051057, June 1, 2007), 12 So.3d 170 (Ala.Civ.App.2007) (table).
 

 [2]
 

 . As a general rule, a party may not file successive Rule 60(b) motions.
 
 See Englebert v. Englebert,
 
 791 So.2d 975, 976 (Ala.Civ.App.2000). However, as this court staled in
 
 Pinkerton Security & Investigations Services, Inc. v. Chamblee,
 
 934 So.2d 386, 390-91 (Ala.Civ.App.2005):
 

 "Alabama caselaw has placed a significant limitation upon the availability of relief under Rule 60(b) where a movant has previously sought relief under that rule. As stated by the Alabama Supreme Court in
 
 Ex parte Keith, 111
 
 So.2d 1018 (Ala.1998), 'fajfter a trial court has denied a post-judgment motion pursuant to Rule 60(b),
 
 that court does not have jurisdiction to entertain a successive postjudgment motion
 
 to "reconsider”
 
 or otherwise review
 
 its order denying the Rule 60(b) motion.’ 771 So.2d at 1022 (emphasis added). In other words, a party who has previously filed an unsuccessful motion seeking relief under Rule 60(b) may not properly file a second motion in the trial court that, in effect, requests the trial court to revisit its denial of the first motion, such as by reasserting the grounds relied upon in the first motion.
 
 See Wadsworth v. Markel Ins. Co.,
 
 906 So.2d 179, 182 (Ala.Civ.App.2005) (‘Successive Rule 60(b) motions on the same grounds are generally considered motions to reconsider the original ruling and are not authorized by Rule 60(b).');
 
 but see McLendon v. Hepburn,
 
 876 So.2d 479, 483 (Ala.Civ.App.2003) (second Rule 60(b) motion held procedurally proper because second motion requested relief based on an 'entirely different ground’ than first motion, raising an issue ‘that could not
 
 *231
 
 even have been raised' when original judgment was entered).”
 

 In this case, because the juvenile court had not ruled on the first Rule 60(b) motion and because the second Rule 60(b) motion raised new grounds upon which the judgments could have been set aside, the general rule against successive Rule 60(b) motions does not apply.
 

 [3]
 

 . Based on the similarities between the facts of
 
 E.D.
 
 and the facts of this case, we find that the father could not have reasonably filed his Rule 60(b)(6) motion within 14 days of the entry of the final judgment in the underlying case and that he filed his Rule 60(b)(6) motion within a reasonable time. The record shows that the father's trial attorney withdrew after the father filed his the notice of appeal in August 2006, and the father did not receive an appointed appellate attorney until February 2007. As in
 
 E.D., supra,
 
 the father’s appellate attorney never had an opportunity to file a motion for a new trial based on ineffective assistance of counsel within the 14-day period set out in Rule 1(B). Within a week of her appointment, the father’s appellate attorney filed a motion with this court seeking leave to file a Rule 60(b) motion, and she actually filed the motion within a week of receiving leave.
 

 [4]
 

 . The father's motions attack only one judgment entered more than three years prior to February 19, 2007; however, he does not attack that judgment on the ground of fraud upon the court. The other judgments the father challenges were all entered within the three-year period set out in Rule 60(b).
 

 [5]
 

 . We note that even if the October 8, 2003, judgment was declared void, that holding would not benefit the father. In multiple subsequent judgments entered after the father was provided counsel, notice, and an opportunity to be heard, the juvenile court found that the child remained dependent and awarded temporary legal custody to DHR. Those judgments would remain in effect, leaving the father in the same legal position as existed after the October 8, 2003, judgment.
 

 [6]
 

 . The father asserts that DHR requested paternity testing and that DHR misrepresented to the court that it wanted the paternity testing because the child's paternal grandmother insisted she would not be considered for placement without proof of the father's paternity. However, the court record indicates that paternity testing was ordered “on oral motion made on behalf of the alleged father of the child” on October 24, 2003. Moreover, the father attached to his "Motion for Relief from Judgment” an October 9, 2003, letter from the paternal grandmother in which she requested paternity testing. Her request immediately preceded her statement that she intended to be considered as a placement option for the child. It can be reasonably inferred from that letter that the paternal grandmother wanted to confirm the father's paternity before accepting placement of the child.
 

 [7]
 

 . The father asserts that the juvenile court denied his right to discover evidence that would have proven that he had not committed sexual abuse. However, the father does not cite any ruling by the juvenile court barring the father from pursuing such discovery.
 

 [8]
 

 . The father’s stated purpose for requesting the mental evaluation was to prove that the mother suffered from antisocial personality disorder. The mother had already submitted to two psychological evaluations, and DHR had submitted a letter from a psychologist indicating that the mother had shown no signs of antisocial personality disorder and that further evaluation was not necessary to rule out that diagnosis. The father’s stated purpose for requesting the videotape was to glean information that the mother had been complicit in the father’s crime of manufacturing a pornographic videotape of C.T. DHR objected on the basis that the father had failed to notify die local district attorney’s office (who maintained the videotape) of the request and on the basis that local criminal authorities had already reviewed the videotape and had apparently found no evidence that the mother had been involved in the father's crime.
 

 [9]
 

 .The father claims he issued 30 subpoenas over the course of the three years of the dependency proceedings, but the record does not contain any evidence to support that contention or any evidence that those subpoenas had actually been served. The father also claims that none of his subpoenaed witnesses testified; however, the father has not asserted that the juvenile court prevented them from testifying. The record contains a transcript of only one hearing, at which no witnesses were called by any party.
 

 [10]
 

 . In the motion, the father asserted that he had addressed the subpoena to R.M.’s last known address, the home of R.M.'s natural father.
 

 [11]
 

 . Rule 1(A), Ala. R. Juv. P., provides, in pertinent part, that ‘‘[i]f no procedure is specifically provided in these rules or by statute, the Alabama Rules of Civil Procedure shall be applicable to the extent not inconsistent herewith.”
 

 [12]
 

 . The father asserts that the mother concealed that R.B., her former paramour, was living with her in 2004 and that R.M., who the father and the guardian ad litem described as a convicted sex offender, resided with her throughout the dependency proceedings.
 

 [13]
 

 . The father also claims that DHR lied about being unable to locate C.T.'s father, thus denying C.T.'s father of his rights. The father has no standing to assert an error on behalf of C.T.’s father.
 
 See generally W.T.H. v.
 
 915 So.2d 64, 72 (Ala.Civ.App.2005) (recognizing the general rule that a litigant may not claim standing to assert the rights of a third party).
 

 [14]
 

 . Actually, the March 11 report makes no conclusion as to the suitability of the home of the paternal grandparents, but expressly leaves that decision to DHR.
 

 [15]
 

 . The court file indicates that DHR filed the March 16, 2004, home study in the juvenile court on March 29, 2004.
 

 [16]
 

 . The record does not contain any psychological evaluation of the paternal grandmother, but a motion indicates that the father intended to submit a favorable psychological evaluation on January 25, 2005.